*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name:  09a0330p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,
　　　　　　　　　　　*Plaintiff-Appellee,*

　　*v.*

KENNETH J. DYER, II,
　　　　　　　　　　　*Defendant-Appellant.*

No. 08-5671

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 07-00039-001—Robert Leon Jordan, District Judge.

Argued:  June 16, 2009

Decided and Filed:  September 8, 2009

Before:  MOORE, GIBBONS, and FRIEDMAN, Circuit Judges.[*]

_____

**COUNSEL**

**ARGUED:** Stephen Ross Johnson, RITCHIE, DILLARD & DAVIES, P.C., Knoxville, Tennessee, for Appellant.  Hugh B. Ward, Jr., ASSISTANT UNITED STATES ATTORNEY, Knoxville, Tennessee, for Appellee. **ON BRIEF:** Stephen Ross Johnson, RITCHIE, DILLARD & DAVIES, P.C., Knoxville, Tennessee, for Appellant.  Hugh B. Ward, Jr., ASSISTANT UNITED STATES ATTORNEY, Knoxville, Tennessee, for Appellee.

　　GIBBONS, J., delivered the opinion of the court, in which FRIEDMAN, J., joined.  MOORE, J. (pp. 10-12), delivered a separate dissenting opinion.

---

[*] The Honorable Daniel M. Friedman, Senior Circuit Judge of the United States Court of Appeals for the Federal Circuit, sitting by designation.

_____

**OPINION**

_____

JULIA SMITH GIBBONS, Circuit Judge.   Kenneth J. Dyer, II, appeals his conviction for aiding and abetting the possession with intent to distribute methamphetamine.  Dyer entered a conditional plea of guilty and received a sentence of eighty months imprisonment by the United States District Court for the Eastern District of Tennessee.  On appeal, Dyer challenges the denial of his motion to suppress evidence of drug use found at a rental cabin, claiming that the search warrant was not supported by probable cause and did not fall under the good faith exception.

For the following reasons, we affirm the denial of the motion to suppress.

**I.**

Stacie Lee Glance rented a cabin at Sunset Cottages in Pigeon Forge, Tennessee, in early December of 2006.  Tipped off by a confidential informant on December 4 that Dyer and Glance were selling drugs from this cabin, officers conducted surveillance of the premises on December 6 and observed Dyer and a woman who fit the description of Glance exit the cabin.  On December 7, Officer Neal Seals of the State of Tennessee Fourth Judicial District Drug and Violent Crime Task Force submitted an affidavit to the Tennessee Circuit Court, requesting a search warrant to inspect the rental cabin for evidence of methamphetamine sales.  The affidavit contained six paragraphs and relied heavily on information from the informant.[1]

_____

[1]The pertinent paragraphs of the supporting affidavits are as follows:

On December 4, 2006, I was contacted by Jackson County, NC, Sheriff's Department Lieutenant Kim Hooper regarding information he had received from a confidential source, hereinafter referred to as CS1.  The Jackson County Sheriff's Department has charged CS1 with various felony drug charges and the disposition of those charges are [sic] pending. On December 1, 2006, CS1 voluntarily gave a statement against his penal interest to Jackson County Sheriff's Department Detective Rick Buchanan.  CS1 stated that CS1 and another individual, within the past seven days, went to meet with Kenny Dyer at a rental cabin in Pigeon Forge, TN.  CS1 [s]tated that while they were at the rental cabin, the individual CS1 was with purchased one ounce of methamphetamine from Kenneth James Dyer II for $1,400.00.  During the transaction, CS1 observed a large quantity of Methamphetamine remaining in the possession of Kenny Dyer.  CS1

The court issued the search warrant that day. Also that same day, Seals and three other officers drove in two cars to the cabin to execute the warrant. As they prepared to execute the warrant, officers observed Dyer and Glance exit the cabin and enter a vehicle. The officers attempted to stop the vehicle; but Dyer, the driver, rammed the car into one of the police cars, rendering the car undrivable, and fled the scene. The officers pursued Dyer and Glance in the remaining functional police car, but Dyer and Glance escaped. The officers informed the rental company of the search warrant, and a rental agent granted officers access to the cabin. Seals executed the warrant and found two safes with a total of $4,979.16 in currency, approximately 50.9 grams of methamphetamine, smoking pipes with residue, a digital scale, and rolling papers. When Glance returned to the cabin later that day, the rental company had voluntarily changed the entry code to the cabin, which prevented Glance from entering the cabin. When Glance called the rental company to gain access to her rental cabin, the company called the police. Officers arrested Glance at the cabin. Dyer was later apprehended and arrested in North Carolina.

Both Glance and Dyer were charged with aiding and abetting possession with intent to distribute five grams or more of methamphetamine. Dyer filed a motion to

---

stated that the transaction, which took place in CS1's presence, transpired in the basement of the rental cabin where a pool table is located. CS1 stated that Stacie Lee Glance was also present at the rental cabin during the transaction. CS1 further stated that a blue Dodge Neon and a gray Ford Ranger with North Carolina registration were parked outside the cabin at the time.

On December 6, 2006, I met with Lieutenant Hooper, Detective Buchanan, and CS1 in Pigeon Forge, TN. CS1 took us to a 316 Silver Stone Way and showed us where the drug transaction had taken place. A blue Dodge Neon bearing NC registration . . . and a gray Ford Ranger bearing NC registration . . . were parked in front of the cabin.

On December 6, 2006, I conducted surveillance at 316 Silver Stone Way. I observed Kenneth James Dyer II, and a white female, fitting the description of Stacie Lee Glance, exit the rental cabin and leave in a blue Dodge Neon. I was able to identify Kenneth James Dyer II from a photograph provided to me by Lieutenant Hooper.

On December 6, 2006, I received information from Lieutenant Hooper that Kenneth James Dyer II and Stacie Lee Glance are both wanted in North Carolina. Lieutenant Hooper faxed me copies of warrants from Swain County, NC, and Buncombe County, NC. Dyer is wanted in Swain County for felony possession of schedule II controlled substance, felony violation of probation, and misdemeanor violation of probation. He is wanted in Buncombe County for feloniously possessing, manufacturing, and transporting methamphetamine in excess of 200 grams but less than 400 grams.

suppress the evidence found at the cabin, claiming 1) that the affidavit did not contain any information as to the reliability of the confidential source and 2) that the information provided by the confidential source was stale. The United States District Court for the Eastern District of Tennessee referred the matter to a magistrate judge, who issued a report and recommendation denying the motion. First, the magistrate judge recommended finding that Dyer had no standing to challenge the search because he was not listed as a renter or a guest of the cabin; and, even if he had possessed a privacy interest in the rental cabin, he abandoned it by fleeing from the police and never returning. By contrast, the magistrate judge recommended finding that Glance did have a privacy interest in the rental cabin because the cabin was listed in her name and because she did not abandon the premises, as evidenced by her returning shortly after the warrant was executed. The magistrate judge further recommended concluding that the search warrant was supported by probable cause and that it was not based on unconstitutionally stale information. Dyer and Glance separately objected to the magistrate judge's report and recommendation. The government supported the report and recommendation in its entirety.

The district court adopted in part and overruled in part the magistrate's report and recommendation. The district court found that Dyer had a privacy interest in the cabin because the evidence established that he was Glance's overnight guest. The district court further found that Dyer did not abandon his property because when he left the cabin, he was planning to return. The district court adopted the remainder of the magistrate's recommendations and denied the motion to suppress, finding that although both Dyer and Glance had privacy interests in the rental cabin, the search warrant was supported by probable cause, and the information it relied on was not stale.

Dyer entered into a conditional plea agreement, reserving his right to appeal the denial of his motion to suppress. Glance went to trial and was acquitted by a jury. Dyer timely appealed the denial of his motion to suppress to this court.

**II.**

In an appeal of the denial of a motion to suppress, we review a district court's factual findings for clear error and its legal determinations *de novo*. *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005). A finding of probable cause constitutes a legal determination, which we review *de novo*. *United States v. Martin*, 526 F.3d 926, 936 (6th Cir. 2008), *cert denied*, 129 S. Ct. 305 (2008). Nevertheless, "[t]he evidence must be viewed in a light most likely to support the decision of the district court." *Frazier*, 423 F.3d at 531 (citation omitted). In this case, because the district court denied Dyer's motion, we must view the evidence in the light most favorable to the government. *See United States v. Gunter*, 551 F.3d 472, 479 (6th Cir. 2009).

As a threshold matter, we note that although Dyer's standing to challenge the search was debated before the district court, the government has not appealed the district court's determination that standing existed and has thus waived the issue. *See United States v. Washington*, 380 F.3d 236, 240 n.3 (6th Cir. 2004) (declining to address Fourth Amendment standing when the government failed to raise it on appeal); *United States v. Huggins*, 299 F.3d 1039, 1050 n.15 (9th Cir. 2002) ("Standing to challenge a search or seizure is a matter of substantive Fourth Amendment law rather than of Article III jurisdiction . . . meaning that the government can waive the standing defense by not asserting it." (internal citations omitted)); *see also Rakas v. Illinois*, 439 U.S. 128, 140 (1978) (finding Fourth Amendment questions non-jurisdictional because "we think that definition of those rights is more properly placed within the purview of substantive Fourth Amendment law than within that of standing"). We will thus assume standing for purposes of the Fourth Amendment and proceed to address the merits of Dyer's claims.

The Fourth Amendment prohibits search warrants unless they have been issued "upon probable cause, supported by oath or affirmation." U.S. Const. amend. IV. In order to demonstrate probable cause sufficient to justify a search warrant, the proponent must submit an affidavit that "indicate[s] a fair probability that evidence of a crime will be located on the premises of the proposed search." *United States v. Jenkins*, 396 F. 3d

751, 760 (6th Cir. 2005) (internal citations and quotation marks omitted).  In reviewing the sufficiency of the evidence supporting probable cause, we are limited to examining the information contained within the four corners of the affidavit.  *Frazier*, 423 F.3d at 531.  Nevertheless, when considering that information, we look to the totality of the circumstances.  *See Illinois v. Gates*, 462 U.S. 213, 230 (1983).

It is well established that a magistrate may rely on hearsay contained in the affidavit when determining whether to issue a search warrant.  *Gunter*, 551 F.3d at 479.  However, when the majority of the information in the affidavit comes from confidential sources, as it does in this case, courts "must consider the veracity, reliability, and the basis of knowledge for that information as part of the totality of circumstances."  *United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003).  "While independent corroboration of a confidential informant's story is not a *sine qua non* to a finding of probable cause, in the absence of any indicia of the informants' reliability, courts insist that the affidavit contain substantial independent police corroboration."  *Frazier*, 423 F.3d at 532 (internal citations omitted).

In this case, Seals's affidavit contained six paragraphs, the bulk of which contained information received from a confidential informant.  Dyer claims that this information is so unreliable that it does not support a finding of probable cause because the affidavit failed to establish the confidential informant's reliability.  Dyer relies heavily on *Frazier*, in which this court found that an affidavit did not support a finding of probable cause because it did not contain "any indicia" of the informants' reliability.  *Id*.  In particular, the *Frazier* affidavit contained "no averments about the reliability of the information provided by the anonymous informants in the past, . . . no averments about the length of the relationship between [the officer] and the confidential informants, and . . . no suggestion that [the officer] disclosed the informants' true identities to the issuing magistrate."  *Id*.  Dyer correctly notes that Seals's affidavit similarly lacks any information about the confidential informant's previous tips, the length or nature of the relationship between the informant and Seals, and any indication that the magistrate judge learned of the informant's identity.

The appropriate analysis, however, is "the adequacy of what [the affidavit] does contain, not on what it lacks, or on what a critic might say should have been added." *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000) (*en banc*). Unlike the affidavit in *Frazier*, the affidavit in this case avers that the confidential informant witnessed the drug deal on the premises specified in the search warrant. *Cf. Frazier*, 423 F.3d at 533 (finding no nexus between the place searched and the evidence sought because "none of [the informants] witnessed illegal activity on the premises of the proposed search"). In *United States v. Higgins*, 557 F.3d 381, 390 (6th Cir. 2009), we recently reaffirmed the importance of the "necessary nexus between the place to be searched and the evidence sought," finding no probable cause based, in part, on the absence of facts indicating that "the informant had been inside [the place to be searched] or that the informant had seen drugs or other evidence in or around [the defendant's] apartment." *Id.* at 390 (internal quotation marks and citation omitted). Here, the affidavit asserted that the informant witnessed a drug transaction in the basement of the place to be searched, noted that there was a pool table in the room, stated the exact amount of cash and methamphetamine exchanged, and observed that a large quantity of methamphetamine remained after the sale.[2]

Furthermore, the informant's identity, while not known to the magistrate judge, was known to the officers. "The statements of an informant . . ., whose identity was known to the police and who would be subject to prosecution for making a false report, are thus entitled to far greater weight than those of an anonymous source." *United States v. May*, 399 F.3d 817, 824-25 (6th Cir. 2005). Although Seals did not name the informant, the affidavit claims that Seals was not only contacted by the informant but also met with the informant to corroborate the details. Thus, we reject Dyer's argument that the affidavit does not establish the reliability of the informant.

---

[2]Contrary to the dissenting opinion's assertion, none of the specific details describing the room or the amounts of money and drugs exchanged in the drug transaction could have been gleaned by "anyone who has ever entered an individual's home (or looked through the window)," (Dissenting Op. at 12), particularly when the drug sale in question took place in the basement of a rental cabin.

Dyer additionally argues that the affidavit did not contain substantial independent observations of criminal activity sufficient to corroborate the information provided by the informant. This argument fails for two reasons. First, as noted above, we consider the totality of the circumstances when assessing the adequacy of the information in the affidavit. *See Martin*, 526 F.3d at 936 ("Our inquiry requires the review of the totality of the circumstances 'to make a practical, common-sense,' not hyper-technical, determination of whether probable cause is present." (quoting *Gates*, 462 U.S. at 238)). What the dissenting opinion misses is that only when no substantial supporting evidence exists within the four corners of the affidavit as to the informant's reliability do courts require substantial independent police corroboration. *Frazier*, 423 F.3d at 532. Because the informant witnessed the illegal activity on the premises searched and was known to the officer writing the affidavit, there were sufficient indicia of reliability without substantial independent police corroboration.

Secondly, information gleaned from the confidential informant in this case *was* corroborated by the officers' own observations and research. *Jenkins*, 396 F.3d at 760 ("[I]t has been the rare case in which the Sixth Circuit has found a search warrant based on an informant tip to be inadequate *if* the information has been corroborated to some degree." (internal quotation marks omitted and emphasis in original)). After being contacted by the informant, Seals met with the informant; and the informant showed Seals the rental cabin, where cars matching the informant's description were parked. Seals then conducted surveillance and identified Dyer and a female fitting Glance's description. Significantly, Lieutenant Kim Hooper also faxed copies of outstanding warrants from North Carolina charging Dyer and Glance with drug crimes, including one warrant for Dyer for felonious possession, manufacturing, and transporting methamphetamine.[3] The information also revealed that Glance had a criminal history involving methamphetamine use, and Dyer was on probation. Furthermore, Dyer was

---

[3]During appellate oral argument, the government asserted that, notwithstanding the search warrant, the officers had probable cause to enter the rental cabin based on Dyer's outstanding warrants alone. This argument is likely waived, as the government presented it for the first time on appeal. *See United States v. Williams*, 544 F.3d 683, 690 (6th Cir. 2008). Even if this argument were not waived, we decline to address this issue because we affirm the denial of Dyer's motion to suppress on alternate grounds.

wanted for additional charges of felony possession of a schedule II controlled substance, felony violation of probation, and misdemeanor violation of probation. Although a defendant's criminal history is not dispositive, *see Higgins*, 557 F.3d at 390, it is relevant to the probable cause inquiry. *See United States v. Wagers*, 452 F.3d 534, 541 (6th Cir. 2006). As we have previously explained, "[t]he application of this test [for probable cause] is not fettered by the presumption of innocence embodied in the test for conviction. Instead, a 'person of reasonable caution' would take into account predilections revealed by past crimes or convictions as part of the inquiry into probable cause." *Wagers*, 452 F.3d at 541 (citing *United States v. Blanton*, 520 F.2d 907, 912 (6th Cir.1975)); *see Martin*, 526 F.3d at 937 (6th Cir. 2008) (finding that the defendant's criminal drug history provided other indicia of reliability for the informant's tip that the defendant was involved in illegal drug activity). Given that the officers personally confirmed details matching the informant's description and learned that Dyer was wanted in North Carolina for methamphetamine-related charges, we find that there was sufficient evidence to corroborate the informant's information because the magistrate judge had "a substantial basis for concluding that a search of [the cabin] would uncover evidence of wrongdoing." *See United States v. Miller*, 314 F.3d 265, 271 (6th Cir. 2002); *see also May*, 399 F.3d at 824 ("The additional evidence substantiating an informant's reliability . . . may be any set of facts that support the accuracy of the information supplied by the informant."). Because we find that the warrant was supported by probable cause, we need not address the issue of whether the good faith exception would apply. *See United States v. Pinson*, 321 F.3d 558, 565 (6th Cir. 2003).

**III.**

For the foregoing reasons, we affirm the denial of the motion to suppress.

---

**DISSENT**

---

KAREN NELSON MOORE, Circuit Judge, dissenting. Because the majority's probable-cause analysis is directly contrary to this court's recent holding in *United States v. Higgins*, 557 F.3d 381 (6th Cir. 2009), I must dissent.

In *Higgins*, the police officer's affidavit was based on information provided by an informant who admitted to drug crimes and was known both to the officer and the issuing magistrate judge, but the officer did not attest to the informant's reliability. *Id.* at 389-90. The panel concluded that "the fact that the informant was known to the affiant and issuing magistrate and admitted a crime does not alone provide probable cause." *Id.* at 390. Additionally, the facts stated by the informant and corroborated by the police included "the fact that Higgins lived at the stated location, owned the motorcycle parked outside, and had a drug-related criminal history." *Id.* The informant's information was also corroborated by other individuals who were with the informant when he was arrested. *Id.* The panel declared that this corroboration did "little to reinforce the informant's assertions" because "none of these facts supports the informant's assertion that he had purchased drugs from Higgins at this location the previous day." *Id.* The panel concluded that the warrant lacked probable cause because

> [t]he informant gave his statements after the police discovered a large amount of drugs in his car, giving him an incentive to cooperate with the police to help himself. The affidavit contains no assertion that this informant is known to be reliable, nor did the police corroborate any of the informant's statements beyond the innocent fact that Higgins lived at the stated location and the irrelevant (to the determination of whether Higgins's house contained evidence of a present-day crime) fact that Higgins had a criminal record.

*Id.*

The majority here concludes that the search warrant at issue in the instant case was supported by probable cause because: (1) the affidavit established that CS1 was reliable because Officer Seals knew CS1's identity and CS1 claimed that he witnessed

a drug deal; and (2) the police independently corroborated CS1's statements by confirming the existence of the two cars, the cabin, and the two individuals described by CS1, and by learning that Dyer had an open arrest warrant in North Carolina related to methamphetamine. These facts are strikingly similar to the facts of *Higgins*, and, in every respect except one, the facts supporting probable cause in this case are less supportive or equally as supportive as those in *Higgins*. Here, as in *Higgins*, CS1 was currently facing felony drug charges and was known to the police officer; however, the police officer did not attest to CS1's reliability. Unlike *Higgins*, CS1 was not known to the magistrate judge, admitted only to witnessing a drug transaction, and did not have his story corroborated by other individuals. Thus, there is weaker evidence of reliability concerning CS1 than regarding the informant in *Higgins*. Further, Officer Seals corroborated the existence of the cabin, two vehicles, and the two individuals described by CS1, just as the officer in *Higgins* verified Higgins's residence and motorcycle ownership. Just as in *Higgins*, these innocent facts which were corroborated do little to support CS1's assertions regarding drug activity. Finally, although the officers in both cases had knowledge of the defendant's criminal history, such information is irrelevant.[1] *Higgins*, 557 F.3d at 390.

The only notable difference between *Higgins* and the instant case is the fact that CS1 did assert that he witnessed the drug purchase inside the cabin, thus "establish[ing] the necessary nexus between the place to be searched and the evidence sought." *Id.* (internal quotation marks omitted). However, this fact alone cannot compensate for the other inadequacies of the affidavit: It simply cannot be enough to support a search warrant that a previously untested and unknown informant comes to the police with drug charges hanging like the Sword of Damocles over the informant's head, claims to have witnessed drug activity in another individual's home, and describes innocent facts such as the home's location and design and the alleged drug dealer's physical appearance.

---

[1]Moreover, whereas the officer in *Higgins* ascertained that Higgins had two prior convictions for narcotics trafficking, *Higgins*, 557 F.3d at 385, and thus proof that Higgins had been adjudicated guilty of drug offenses, Officer Seals knew only that Dyer had an open arrest warrant in North Carolina concerning drugs, a fact which, by itself, does not definitively show that Dyer had ever been found guilty of a drug crime.

Such innocent factual information as the home's location or description and the individual's physical appearance is readily available to anyone who has ever entered an individual's home (or looked through the window) and does nothing to verify a claim of drug activity. The majority thus condones the real possibility of officers searching people's homes on the basis of unsubstantiated accusations of drug activity by dubious informants who themselves are criminal defendants currying favor for their own sentences or targeting persons out of enmity or spite. Because our Constitution and precedent reject such a lax search-warrant regime, I respectfully dissent.