NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0358n.06
CASE NO. 18-3875

**FILED**
Jul 15, 2019
DEBORAH S. HUNT, Clerk

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES of AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| RICA JONES, | ) | THE NORTHERN DISTRICT OF |
| | ) | OHIO |
| Defendant-Appellant. | ) | |
| | ) | |

Before: BATCHELDER, ROGERS, and THAPAR, Circuit Judges.

**ALICE M. BATCHELDER, Circuit Judge.** Defendant Rica Jones appeals the district court's denial of her motion to suppress evidence obtained via a search warrant. We AFFIRM.

**I.**

On February 14, 2018, Akron (Ohio) Police Detective Mike Schmidt prepared an affidavit for a search warrant, naming 450 West Bartges Street (the residence of defendant-appellant Rica Jones) as the place to be searched and the trappings of drug trafficking (drugs, paraphernalia, guns, currency, and records) as the things to be seized. As probable cause, Det. Schmidt described a controlled buy, seven days earlier, in which a known confidential informant (CI) contacted a man named Edwin Dortch and arranged a meeting to buy marijuana. One detective watched Dortch leave the subject address and Det. Schmidt watched the meeting between Dortch and the CI that resulted in the drug sale. The CI had told Det. Schmidt that Dortch was an "occupant" of the subject residence and had drugs to sell, and that Rica Jones and Terrick Thompson were also selling drugs from the subject residence. Det. Schmidt explained that this CI had previously given

him information, which he had been able to corroborate, about drugs in this area of Akron, asserting that this CI "has displayed . . . specific knowledge as to the uses, effects[,] and distribution patterns of controlled substances in the Akron, Summit County, Ohio area." In the affidavit, Det. Schmidt also listed prior drug-related activities at the subject residence. A search in 2015 had yielded a .38 caliber handgun, digital scales, drug packaging bags, and $6,710 in cash, and had led to Thompson's arrest. Thompson had several prior convictions, including drug possession, and according to a police report, listed his residence as the subject address. In January 2018, police responded to an assault at the subject residence and found Kevin Cook there as the alleged perpetrator. Based on Det. Schmidt's personal experience, Cook was a "known large scale drug dealer" who had previous arrests for drug trafficking. Finally, police surveillance had spotted cameras mounted outside the house to monitor approaching traffic, and had recorded a car registered to Joseph Sheffield, a known drug trafficker, parked at the residence "on several occasions," including the day that Det. Schmidt prepared the affidavit.

An Akron municipal court judge issued the warrant and the police executed the search, which discovered drugs (methamphetamine, fentanyl, heroin, and carfentanil), over $9,000 in cash, three handguns, ammunition, and drug processing items. The indictment charged Dortch and Thompson with possession and distribution and charged Rica Jones with maintaining a drug house in violation of 21 U.S.C. § 856(a)(1). The defendants moved to suppress the evidence, claiming that Det. Schmidt's affidavit failed to establish probable cause for the warrant.

The district court determined that the controlled buy established a direct connection between Dortch's drug sale and the subject residence and, further, that "[g]iven the [CI]'s historical track record, [his] track record in this case, and [] Detective Schmidt's independent corroboration of much of the [CI's] information, the issuing judge had a substantial basis for finding that there was a fair probability that the police would find evidence of narcotics sales activity at [the subject

2

residence].” *United States v. Thompson*, No. 5:18-CR-180, 2018 WL 2354918, at \*4 (N.D. Ohio May 24, 2018). The court concluded that “the issuing judge could have considered either this directly observed nexus between Dortch’s illicit activities and [the subject residence] or the informant’s tip about illicit activities at that location, or both, to find probable cause that evidence related to narcotics would be found [there].” *Id.* at \*5.

The district court denied the suppression motion and Jones entered a guilty plea, reserving the right to appeal the denial of the motion. Jones now appeals.

## II.

On appeal from the denial of a motion to suppress, “we review the district court’s findings of fact for clear error and its conclusions of law de novo.” *United States v. Buford*, 632 F.3d 264, 268 (6th Cir. 2011). We construe the evidence “in the light most likely to support the district court’s decision.” *United States v. Powell*, 847 F.3d 760, 767 (6th Cir. 2017). And “a denial of a motion to suppress will be affirmed on appeal if the district court’s conclusion can be justified for any reason.” *United States v. Pasquarille*, 20 F.3d 682, 685 (6th Cir. 1994).

Probable cause for a warrant exists if “there is a fair probability that contraband or evidence of a crime will be found in a particular place.” *Illinois v. Gates*, 462 U.S. 213, 238 (1983). When an issuing judge has found probable cause in the affidavit and issued a warrant, we grant “great deference to [that judge]’s findings, which should not be set aside unless arbitrarily exercised.” *United States v. Hines*, 885 F.3d 919, 924 (6th Cir. 2018). Accordingly, we must “review the affidavit based on [the] totality of the circumstances . . . rather than a line-by-line scrutiny,” *United States v. Brown*, 732 F.3d 569, 573 (6th Cir. 2013) (quotation and editorial marks omitted), and we do not examine it hyper technically, but rather read it in a commonsense manner, *United States v. Greene*, 250 F.3d 471, 479 (6th Cir. 2001); *accord United States v. Christian*, 925 F.3d 305, 311-12 (6th Cir. 2019) (en banc) (emphasizing that the “probable-cause determination should be

paid great deference," that "we overturn that decision only if the magistrate [judge] arbitrarily exercised his or her authority," and that we do not "attempt a de novo review of probable cause" (quotation marks and citations omitted)). "The appropriate analysis . . . [considers] the adequacy of what the affidavit does contain, not on what it lacks, or on what a critic might say should have been added." *United States v. Dyer*, 580 F.3d 386, 391 (6th Cir. 2009) (quotation and editorial marks omitted).

Here, the affidavit reasonably leads the reader, be it the issuing state-court judge or the reviewing district-court judge, to draw these collective conclusions or inferences. This is a house where known or proven drug-dealers live (Thompson), frequent (Sheffield), or visit (Cook, Dortch); where police have previously discovered drug dealing materials and guns; and where there are currently visible security cameras mounted outside. Sometime during the preceding week, a known and previously verified CI—with "specific knowledge . . . [about] distribution patterns of controlled substances in the Akron [] area"—had reported to the attesting officer that "residents" (Jones and Thompson) and an "occupant" (Dortch) were selling drugs out of the house. Furthering this claim, the CI arranged a "controlled buy" from Dortch by calling him, meeting with him, and buying marijuana from him—during which one detective watched Dortch leave the house and another (the attesting officer) watched Dortch arrive at the meeting at which he sold the marijuana to the CI. The issuing judge determined that this was enough probable cause for a search warrant at the house.

Jones raises four arguments in support of her claim that the affidavit does not show probable cause. First, she claims that Dortch's sale of marijuana (the controlled buy) has no nexus to the house because the affidavit does not say: (1) that Dortch lived at the house (and apparently he did not); (2) whether Dortch had even been to the house more than this once; (3) who owned the car that Dortch drove from the house to the controlled buy; (4) whether Dortch took anything

from the house; (5) whether Dortch went directly from the house to the controlled buy or stopped somewhere in between; (6) how much time passed from his leaving the house to arriving at the controlled buy; or (7) whether the police detective actually followed Dortch from the house to the controlled buy. But this is not a common sense, totality-of-the-circumstances approach; this is an impermissible line-by-line scrutiny directed at what is lacking or "what a critic might say should have been added." This does not demonstrate that the issuing judge's finding of probable cause was arbitrary.

Next, Jones argues that the CI's accusation that Jones and Thompson were selling drugs from the house must be excluded or ignored because it is speculative and uncorroborated, failing to account for how the CI would have had such knowledge—the affidavit does not claim that the CI knew either of them, had ever interacted with them, or had even been inside the house. But Det. Schmidt explained that he could rely on this CI because he knew him, knew that he had specific knowledge of the drug trade in Akron, and had verified this CI's information in the past. "The statements of an informant, whose identity was known to the police and who would be subject to prosecution for making a false report, are thus entitled to far greater weight than those of an anonymous source." *Dyer*, 580 F.3d at 391(editorial marks omitted). Neither the issuing judge nor the district court held this accusation as determinative, and neither erred by considering it in the totality-of-the-circumstances assessment of probable cause.

Similarly, Jones argues that the search and the seizure of guns and drug-related devices at the house in 2015 and Thompson's (and other visitors') prior drug-related arrests must be excluded or ignored because they are too stale to be relevant here. Recognizing that drug dealers have Fourth Amendment rights too, she is suggesting that the warrant was issued based on their past criminality rather than a "fair probability" of a current crime. But, again, this was one aspect of

the totality-of-the-circumstances assessment of probable cause, made relevant, in part, by Dortch's presence at this house with these people in relation to the later controlled buy.

Finally, Jones argues that the affidavit is insufficient to prove probable cause to suspect drug dealing because it contains no account of any other suspicious or drug-dealing-related activities at the house based on the acknowledged police surveillance. But this is an impermissible attack on what is lacking or "what a critic might say should have been added" and does nothing to demonstrate that the issuing judge's finding of probable cause was arbitrary.

On the whole, the issuing judge considered the totality of the circumstances presented in the affidavit, found probable cause sufficient to justify a search, and issued a search warrant. The district court properly reviewed that determination and denied the motion to suppress.

**III.**

For the foregoing reasons, we AFFIRM the judgment of the district court.