NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0563n.06

No. 21-5571

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Dec 06, 2021
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | WESTERN DISTRICT OF TENNESSEE |
| ALFONZO MITCHELL, | ) | |
| | ) | OPINION |
| Defendant-Appellant. | ) | |

Before: SUTTON, Chief Judge; STRANCH and BUSH, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** Alfonzo Mitchell appeals the district court's denial of his motion to suppress. The issues before the court are whether there was probable cause for the issuance of a search warrant and whether Mitchell's statement to the police (after waiving his constitutional rights) derived from an unconstitutional search warrant. The district court found that the search warrant was valid and denied the motion to suppress. Because Mitchell's statement did not derive from an unconstitutional search warrant, and the search warrant was valid, we AFFIRM.

## I.    FACTUAL BACKGROUND

Detective Christopher Kent with the Memphis Police Department sought a search warrant for 1355 Busby Avenue, Memphis, Tennessee 38127 on November 9, 2018. Detective Kent's affidavit describes his work with a confidential informant (CI) and his subsequent corroboration of the informant's tip.

A CI told Detective Kent that Alfonzo Mitchell and his brother kept and sold "crack, cocaine, marijuana, and powder cocaine" at 1355 Busby Avenue. The informant had seen the drugs inside the house within the past five days. The informant had also participated in two reliability buys of illegal narcotics.[1]

With the CI's tip, Detective Kent took steps to corroborate the information. Detective Kent used the Memphis Police Department computer databases to determine that Mitchell and his brother resided at 1355 Busby Avenue. When he showed the CI a photograph of the two Mitchell brothers, the CI positively identified them as the individuals selling and storing drugs at 1355 Busby Avenue. A search of the brothers' criminal history revealed that Mitchell had previous felony narcotics indictments and his brother had "several previous narcotics arrests and convictions."

Detective Kent also surveilled 1355 Busby Avenue "on multiple occasions." During his surveillance, he saw multiple vehicles pull into the driveway, "one or more" occupants exit the vehicle, and enter the house. The occupants would stay for "less than 15 minutes" and then get back into their vehicles and leave. Based on his training and experience in the investigation and detection of illegal drug activity, Detective Kent identified the activity occurring at the house as consistent with narcotics sales.

Detective Kent requested a search warrant for 1355 Busby Avenue based on the tip and his corroboration actions. The issuing judge granted the search warrant on the same day. On the day the search warrant was approved, Detective Kent and other officers executed the warrant. The officers seized drugs and firearms. The officers left a copy of the search warrant at the home and

---

[1] Detective Kent testified that a reliability buy is a controlled buy where officers search the informant before the buy, give the informant department funds, the informant purchases narcotics, and the informant brings the narcotics back the officers.

transported Mitchell and his brother to the police station. When Mitchell arrived at the station, Detective Joshua Redding gave Mitchell an "Advice of Rights" form. The form in the record included the following statements followed by Mitchell's initials:

> Before we ask you any questions, you must understand your rights.
>
> You have the right to remain silent.
>
> Anything you say can be used against you in court.
>
> You have a right to talk to a lawyer for advice before we ask you any questions.
>
> You have a right to have a lawyer with you during questioning.
>
> If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.
>
> If you decide to answer questions now without a lawyer present, you have the right to stop answering questions at any time.

The "Advice of Rights" form in the record also included a waiver of rights statement, which had Mitchell's signature and printed name below it:

> I have read this statement of my rights and I understand what my rights are. No promises or threats have been made to me and no pressure, force, or coercion of any kind has been used against me. At this time, I am ready to answer questions without a lawyer present.

Detective Redding read the form aloud and told Mitchell that he could notify Detective Redding if he did not understand anything. Officer Emmanuel Ufeu sat in the room with Detective Redding and Mitchell. Detective Redding and Detective Kent were witnesses to Mitchell's signing of the "Advice of Rights" form.

After Mitchell filled out the form and before Detective Redding could interview Mitchell, Detective Redding was informed that the officers did not retrieve all the contraband from Mitchell's home during their search. Mitchell gave the officers consent to re-enter his home via a "Consent to Search" form. Detective Redding and another officer returned to Mitchell's home with Mitchell in the vehicle, so that Mitchell could revoke his consent at any time. After the

officers searched the home a second time, they determined that they had not left any contraband at Mitchell's home. Mitchell was then transported back to the police department where Detective Redding advised Mitchell of his rights again.

Mitchell received a "Rights Waiver" form that included the same language as the "Advice of Rights" form. Mitchell initialed and signed the document like he did the "Advice of Rights" form. Detective Redding and Officer Ufeu signed the document as witnesses. Mitchell also verbally confirmed to Detective Redding that he understood his rights.

Detective Redding then conducted a typed interview of Mitchell while Officer Ufeu observed. Before asking whether Mitchell would give a statement, Detective Redding notified him again of his rights. Mitchell had an opportunity to read the statement before he signed and initialed it at the bottom of each page. In the statement, Mitchell made several incriminating statements about the narcotics found in his home. Because Officer Ufeu left the interview at the end of his shift, he did not sign the statement as a witness; instead, Detective Kent served as a witness.

A grand jury later indicted Mitchell on four counts of possession of a controlled substance with intent to distribute in violation of 21 U.S.C § 841(a)(1), two counts of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c), and two counts of possessing a firearm as a felon in violation of 18 U.S.C. § 922(g)(1).

## II. PROCEDURAL BACKGROUND

Mitchell moved to suppress the evidence obtained from the search of his home. A magistrate judge held a hearing on the motion and recommended that the district court deny Mitchell's motion. At the hearing, Detective Kent, Detective Redding, and Officer Ufeu testified.

Mitchell filed objections to the magistrate judge's report and recommendation. The district court overruled Mitchell's objections and denied his Motion to Suppress.

Mitchell later pleaded guilty via a plea agreement to one count of possession of a controlled substance with intent to distribute, one count of possession of a firearm in furtherance of a drug trafficking crime, and one count of possessing a firearm as a felon. In his plea agreement, he reserved the right to appeal the district court's ruling on his motion to suppress. Mitchell timely appealed.

## III. STANDARD OF REVIEW

On a motion to suppress, the court examines "the district court's factual findings for clear error and its legal conclusions de novo." *United States v. White*, 874 F.3d 490, 495 (6th Cir. 2017). The court views the evidence "in the light most favorable to the district court's" factual determinations, *United States v. Trice*, 966 F.3d 506, 512 (6th Cir. 2020), *cert. denied,* 141 S. Ct. 1395 (2021), because we must give "due weight to the factual inferences and credibility determinations made by" the lower court, *United States v. Moon*, 513 F.3d 527, 536 (6th Cir. 2008). "[A] denial of a motion to suppress will be affirmed on appeal if the district court's conclusion can be justified for any reason." *Trice*, 966 F.3d at 512 (quoting *United States v. Moorehead*, 912 F.3d 963, 966 (6th Cir. 2019)).

## IV. DISCUSSION

Mitchell argues that the district court erred in determining that probable cause existed for the search warrant. The Government responds that even if there was no probable cause to support the search warrant, the good-faith exception applies. Finally, Mitchell asserts that because the search of his home was unconstitutional, the district court should have suppressed his statement to the police.

### A.     Probable Cause for the Search Warrant

The Fourth Amendment protects individuals from "unreasonable searches and seizures." U.S. CONST. amend. IV.  It also provides that a warrant must have probable cause "supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *Id.*  Probable cause "is not a high bar," *D.C. v. Wesby*, 138 S. Ct. 577, 586 (2018) (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)), as it "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity," *id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 243–44 n.13 (1983)).  Thus, to show that probable cause supports a search warrant, the officer "must submit an affidavit that 'indicate[s] a fair probability that evidence of a crime will be located on the premises of the proposed search.'" *United States v. Hines*, 885 F.3d 919, 923 (6th Cir. 2018) (quoting *United States v. Dyer*, 580 F.3d 386, 390 (6th Cir. 2009)).  The search warrant affidavit must establish a "nexus between the place to be searched and the evidence sought." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc) (quoting *United States v. Van Shutters*, 163 F.3d 331, 336–37 (6th Cir. 1998)).

We examine the "four corners" of a search warrant affidavit "under the totality of the circumstances" and with "great deference toward the issuing judge's determination." *United States v. Moore*, 999 F.3d 993, 996 (6th Cir. 2021).  When an affidavit relies on information from a confidential source, examining the totality of the circumstances includes looking to "a confidential informant's 'veracity, reliability, and basis of knowledge.'" *Hines*, 885 F.3d at 923 (quoting *United States v. May*, 399 F.3d 817, 822 (6th Cir. 2005)).  If the judge issuing the warrant "can conclude independently that the informant is reliable, an affidavit based on the informant's tip will support a finding of probable cause." *United States v. McCraven*, 401 F.3d 693, 697 (6th Cir. 2005).

Detective Kent's affidavit included information that the CI provided a tip that Mitchell was engaging in drug trafficking from his home. Detective Kent's affidavit did not rely solely on the tip, but included his investigation that revealed activity consistent with drug trafficking. Detective Kent requested that a search warrant be issued "to search the person(s), associates, vehicles, outbuildings, and all electronic device(s) and premises" of 1355 Busby Avenue.

Mitchell argues that there are four reasons why no probable cause existed to issue the warrant:[2] the reliability of the CI was not established, Detective Kent did not sufficiently corroborate the CI's tip, the affidavit did not have any information about firearms, and the CI may have provided stale information.

Beginning with Mitchell's argument that the reliability of the CI was not established, we look to the totality of the circumstances because even though an informant's "'veracity,' 'reliability,' and 'basis of knowledge' are all highly relevant," they "are not 'separate and independent requirements to be rigidly exacted in every case.'" *United States v. Higgins*, 557 F.3d 381, 389 (6th Cir. 2009) (quoting *Gates*, 462 U.S. at 230). Here, the confidential informant performed two reliability buys. Mitchell contends that the affidavit does not provide specific information about the reliability buys or that the buys led to any convictions or arrests. The additional information that Mitchell would have preferred to be in the affidavit "may have been helpful," but "[t]he affidavit is judged on the adequacy of what it does contain, not on what it lacks." *United States v. Woosley*, 361 F.3d 924, 927 (6th Cir. 2004) (quoting *United States v. Allen*, 211 F.3d 970, 975 (2000) (en banc)). Also, even when the affidavit does not indicate that

---

[2] Taking issue with the district court's finding of credibility regarding the officers who testified at the suppression hearing, Mitchell argues that the officers lacked credibility because the evidence showed that they had no issue with violating Mitchell's Fourth Amendment rights. As we have explained, the court looks to the four corners of the affidavit when determining if probable cause existed for the search warrant. *Moore*, 999 F.3d at 996.

the reliability buys were recorded or surveilled, reliability buys can be sufficient to establish probable cause when examining the totality of the circumstances. *See United States v. Henry*, 299 F. App'x 484, 487 (6th Cir. 2008).

Mitchell also argues that the CI's tip was not sufficiently corroborated. But even when an affidavit "supplies little information concerning an informant's reliability," if the affidavit has "sufficient corroborating information," then the affidavit may still support a finding of probable cause. *Woosley*, 361 F.3d at 927; *see also United States v. Tuttle*, 200 F.3d 892, 894 (6th Cir. 2000). In his affidavit, Detective Kent described the steps that he took to corroborate the CI's tip. He confirmed via the Memphis Police Department's electronic databases that Mitchell resided at 1355 Busby Avenue. He also showed the CI a photo of Mitchell and his brother, which the informant positively identified as the individuals selling and storing the drugs at 1355 Busby Avenue. Detective Kent also investigated Mitchell and found that he had "previous felony narcotics indictments."

With this background information, Detective Kent surveilled 1355 Busby Avenue on several occasions. "He observed multiple vehicles pull into the driveway of 1355 Busby, one or more of the occupants exited the vehicle, entered the house, stayed inside for less than 15 minutes, and then got back into the vehicles, and left." Based on his training and experience "in the investigation and detection of illegal drug activity," Detective Kent identified the activity that he observed at 1355 Busby Avenue as "consistent with narcotic sales."

Mitchell argues that this corroboration is insufficient because Detective Kent never explained the CI's relationship to Mitchell, did not witness any drug sales, and did not ask the CI to conduct a controlled buy from Mitchell. Our review, however, focuses on the adequacy of the

information in the affidavit. *See Woosley*, 361 F.3d at 927. Detective Kent explained that he did not specify the nature of the informant's relationship with Mitchell to protect the identity of the CI. We have determined, moreover, that probable cause can be established when police observation and investigations corroborate an informant's detailed tip. *See United States v. Gill*, 685 F.3d 606, 610 (6th Cir. 2012). Here, a reliable CI observed drugs in Mitchell's home within five days of the affidavit being written and the police surveilled the house and found activity consistent with drug trafficking.

The affidavit also indicates that Mitchell has previous felony narcotics indictments, and his brother has several narcotics arrests and convictions. Mitchell contends that although past drug convictions are relevant in determining probable cause for a drug trafficking search warrant, being indicted for an unspecified drug felony in the past does not share the same relevance in a probable cause determination.

Indeed, prior drug convictions can (but do not always) support probable cause, *United States v. Fitzgerald*, 754 F. App'x 351, 359 (6th Cir. 2018). A "defendant's status as a drug dealer, standing alone," cannot support probable cause for a search warrant. *United States v. Reed*, 993 F.3d 441, 448 (6th Cir. 2021), *cert. denied,* No. 21-5265, 2021 WL 4508917 (Oct. 4, 2021). Mitchell is correct that the mere existence of a previous and unrelated indictment alone is not enough to establish probable cause. *See United States v. Ellsworth*, 647 F.2d 957, 964 (9th Cir. 1981). But the affidavit also provided information that contraband was located at Mitchell's home based on the CI's recent observations inside the home and the investigation and surveillance by the police. The warrant also authorized the search of a home that was confirmed to be both Mitchell *and* his brother's residence and Mitchell's brother has both narcotics arrests *and* convictions as set out in the affidavit.

Mitchell argues that the affidavit did not contain information about firearms, presumably asserting that the search warrant was overbroad in that respect. We have held that "guns are 'tools of the trade' in drug transactions." *United States v. Hardin*, 248 F.3d 489, 499 (6th Cir. 2001) (quoting *United States v. Arnott*, 704 F.2d 322, 326 (6th Cir. 1983)). And while there was no explicit reference to firearms being observed in Mitchell's home "'[i]t is well settled that firearms may be seized pursuant to a search warrant directed at narcotics,' as '[f]irearms are evidence of drug trafficking.'" *United States v. Meadows*, No. 3:19-CR-95-TAV-HBG-2, 2019 WL 6258068, at *6 (E.D. Tenn. Oct. 18, 2019) (alteration in original) (quoting *United States v. Davis*, 900 F.2d 260 (Table), 1990 WL 51399, at *1 (6th Cir. 1990)), *report and recommendation adopted,* No. 3:15-CR-95-TAV-HBG-2, 2019 WL 6255837 (E.D. Tenn. Nov. 22, 2019). Detective Kent averred that Mitchell was engaged in drug trafficking out of his home. Combining this trafficking information with his experience and training that individuals that are involved in drug trafficking often possess firearms, these factors provided a basis for Kent to list firearms as an item in the search warrant. *See United States v. Kia*, 170 F. App'x 457, 461 (9th Cir. 2006); *see also Meadows*, 2019 WL 6258068, at *6.

Mitchell asserts that certain information in the affidavit could be stale. The affidavit said that the CI had "observed marijuana, crack cocaine, and cocaine inside of 1355 Busby Ave . . . within the past (5) days." Mitchell argues that because the dates on which the informant made these observations cannot be disclosed, "'within the past five days' could have been weeks, or even years old." When the probable cause that was "sufficient at some point in the past" becomes "insufficient as to evidence at a specific location," it becomes stale. *United States v. Archibald*, 685 F.3d 553, 558 (6th Cir. 2012). Here, Mitchell's interpretation of the affidavit is unreasonable.

The affidavit is reasonably read as referring to the five-day period before the warrant was prepared and signed.

Based on both the CI's tip and Detective Kent's investigation and corroboration of the tip, the issuing judge could reasonably conclude that there was a "fair probability" that contraband or evidence of a crime would be found in Mitchell's home. *See Hines*, 885 F.3d at 923 (quoting *Dyer*, 580 F.3d at 390). Probable cause existed on this record.

### B.  Good Faith Exception

The Government argues that even if the court were to find probable cause lacking, the search was still constitutional under the good faith exception articulated in *United States v. Leon*, 468 U.S. 897 (1984). Mitchell responds that the good faith exception does not apply because the warrant was lacking a probable cause nexus.

The exclusionary rule prohibits the Government from using "incriminating evidence at a defendant's trial if the police violated the Fourth Amendment when discovering the evidence." *Reed*, 993 F.3d at 450. *Leon* "held that the exclusionary rule generally should not apply when officers obtain a warrant from a neutral judge." *Id.* Mitchell argues that *Leon's* good faith exception to the rule does not apply because the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* (quoting *Leon*, 468 U.S. at 923). This exception is also known as the "bare-bones affidavit." *Id.*

Mitchell argues that there was no minimally sufficient nexus between the alleged illegal drug activity and the search of his home to support an officer's good faith belief in the validity of the search warrant. Even if the affidavit does not establish a nexus sufficient to support probable cause, however, "the affidavit will avoid the bare-bones label so long as it identifies a 'minimally

sufficient' nexus between the two." *Id.* (citing *Carpenter*, 360 F.3d at 596). The minimally sufficient nexus standard is a "less demanding showing than the 'substantial basis' threshold required to prove the existence of probable cause." *United States v. Fitzgerald*, 754 F. App'x 351, 362 (6th Cir. 2018) (quoting *United States v. Frazier*, 423 F.3d 526, 536 (6th Cir. 2005). The affidavit, however, must contain "more than 'suspicions, or conclusions.'" *United States v. Ward*, 967 F.3d 550, 554 (6th Cir. 2020) (quoting *United States v. Christian*, 925 F.3d 305, 312 (6th Cir. 2019) (en banc)).

The affidavit here both describes the CI's tip and the actions that Detective Kent took to investigate and corroborate the tip. Based on the presence of a variety of drugs that the CI observed at 1355 Busby Avenue, and the activity that Detective Kent observed at 1355 Busby Avenue that he identified as consistent with drug sales, Detective Kent requested that a search warrant be issued for 1355 Busby Avenue.

It is true that an officer's subjective knowledge is not sufficient to satisfy a finding of objective good faith. *United States v. Hodson*, 543 F.3d 286, 293 (6th Cir. 2008). Here, however, the affidavit described a reliable CI who had recently observed drugs at Mitchell's house, the police investigation of drug activity at the house, a positive identification by the CI of the Mitchell brothers, verification that the brothers lived at the house, and police research on drug-related activity, including prior convictions of Mitchell's brother on drug charges. Based on the facts set forth in the affidavit, an officer could objectively believe that probable cause existed to search Mitchell's home for evidence of illegal drug activity.

Because the affidavit established a minimally sufficient nexus between illegal drug activity and the home at 1355 Busby Avenue, the good faith exception would apply even if probable cause had been lacking.

### C.     Mitchell's Statement

Mitchell gave a statement to the police after the search of his home that he argues the district court should have suppressed because it flowed from the unconstitutional search of his residence. The Government contends that because Mitchell did not argue that his statement derived from an illegal search of his home, plain error review applies. *See United States v. Calvetti*, 836 F.3d 654, 664 (6th Cir. 2016).

In his motion to suppress, Mitchell moved to "suppress any and all evidence, including physical evidence and oral statements, which resulted from his illegal search and arrest." The Government responded that "the defendant argues that his statement should be suppressed because it was derived from the unlawful search of 1355 Busby." Mitchell also made the same argument at the suppression hearing—that the statement should be suppressed because his home was illegally searched. Because Mitchell did make the argument that his statement derived from an illegal search of his home, plain error review does not apply.

While Mitchell argued in district court that his *Miranda* rights were violated, he does not make his *Miranda* argument on appeal; instead, he argues that the statement should be suppressed because it derived from an unconstitutional search. Mitchell also argues that the connection between the initial illegal search and his statement is not attenuated. Because the search was constitutional, Mitchell's argument on appeal that his statement should be suppressed based on an unconstitutional search fails.

## V.    CONCLUSION

Because there was probable cause to execute the search warrant and Mitchell's statement did not derive from an unconstitutional search of his house, we AFFIRM the district court's judgment.