NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0120n.06

No. 25-5758

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Mar 10, 2026

KELLY L. STEPHENS, Clerk

UNITED STATES OF AMERICA,

  Plaintiff-Appellee,

v.

ROBERT M. SMITH,

  Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY

OPINION

Before: BOGGS, SILER, and KETHLEDGE, Circuit Judges.

KETHLEDGE, Circuit Judge. Robert Smith pled guilty to federal gun and drug charges. He now appeals the district court's denial of his motion to suppress evidence found in his residence. We reject his arguments and affirm.

In February 2024, Kentucky State Police Trooper Matthew Day stopped a car with an expired license plate. The driver allowed Day to search the car, where the trooper found fentanyl. Day read the driver and passenger their *Miranda* rights, and they agreed to speak with him. They told him they had bought the fentanyl from Robert "Pumpkin" Smith at his house three days earlier. While there, they had seen Smith with 10 ounces of fentanyl, $12,000 in cash, and multiple guns. They also said that they had purchased drugs from Smith three or four times a week for the past 18 months, and that they had driven Smith on a drug run to Lexington, Kentucky. Besides fentanyl, Smith sold methamphetamine, cocaine, ecstasy, and prescription medications; he stored these drugs in a purse that he carried with him; and he always conducted drug deals in his kitchen.

During past drug deals, the informants had seen Smith with up to $75,000 in cash. They said that he stored the money he received in a safe-deposit box at a local bank or in a safe in his bedroom.

The informants also told Day that Smith lived in a wooden house with a concrete porch on Mill Creek Road; that a concrete bridge led to the house; and that Smith kept a single-wide trailer and approximately 12 vehicles, including a Ford F-150, in the yard. They also shared a photo of Smith, and gave Day his phone number.

Based on this information, as recited by Day in an affidavit, a state judge issued a search warrant for Smith's house. The search revealed fentanyl, methamphetamine, hydrocodone pills, a digital scale, $30,000 in cash, 12 guns, and ammunition. A federal grand jury thereafter charged Smith with multiple gun and drug offenses. Smith moved to suppress the evidence from the search, but the district court denied the motion without a hearing.

Smith then pled guilty to possession of fentanyl with intent to distribute and to possession of a firearm in furtherance of a drug-trafficking offense. 21 U.S.C. § 841(a)(1); 18 U.S.C. § 924(c)(1)(A). His plea agreement preserved his ability to appeal "whether the District Court erred when it found that the warrant to search his residence was supported by probable cause and, alternatively, that the good faith exception to the exclusionary rule applied." Plea Agmt. 4. The court sentenced Smith to 120 months in prison, followed by four years of supervised release. This appeal followed.

Smith challenges the district court's denial of his motion to suppress. We review the district court's legal conclusions de novo and its factual findings for clear error, viewing the evidence in the light most favorable to the district court's decision. *See United States v. Collazo*, 818 F.3d 247, 253 (6th Cir. 2016).

Smith argues the police lacked probable cause to search his house. Probable cause means "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). When probable cause is based on information a police informant provides in an affidavit, courts "must consider the veracity, reliability, and the basis of knowledge for that information." *United States v. Coffee*, 434 F.3d 887, 893 (6th Cir. 2006). An informant's eyewitness account can provide "substantial evidence" that illegal drugs will be present in a defendant's house. *United States v. Pelham*, 801 F.2d 875, 878 (6th Cir. 1986).

Here, two informants with first-hand knowledge of Smith's drug-dealing provided Day with the information in the warrant affidavit. The informants said they had repeatedly purchased fentanyl from Smith at his house—including within the prior three days—and recounted in substantial detail the particulars of Smith's drug-dealing operation. They also described Smith's house, his driveway, and the vehicles he kept on his property. And they gave the police Smith's photo and cellphone number. These detailed, first-hand accounts gave the state judge reasonable grounds to determine that the informants were telling the truth. *See United States v. Dyer*, 580 F.3d 386, 391 (6th Cir. 2009); *United States v. Miller*, 314 F.3d 265, 270–71 (6th Cir. 2002).

The informants' statements were credible for two other reasons. For one, statements of informants "known to the police" are entitled to greater weight than "those of an anonymous source," because lying to the police exposes an informant to criminal liability. *United States v. May*, 399 F.3d 817, 824–25 (6th Cir. 2005). And here Day undisputedly knew the informants' identities after stopping their vehicle. Moreover, the informants made statements against penal interest, which enhanced their credibility. *See United States v. Kinison*, 710 F.3d 678, 683 (6th Cir. 2013). They admitted to repeatedly purchasing fentanyl and even disclosed that they had taken Smith on a drug run to Lexington, making them potential accomplices. The informants'

accounts therefore gave the judge a substantial basis to conclude that a search of Smith's home would turn up illegal drugs. *See id.*; *Dyer*, 580 F.3d at 391–92.

Smith's arguments to the contrary are mistaken. He contends that the information in the affidavit was unreliable because Day did not name the informants. But "there is no requirement that an informant be named either in the affidavit or the search warrant." *United States v. Jackson*, 470 F.3d 299, 308 (6th Cir. 2006). Smith also says that, to establish probable cause, Day needed to corroborate the informants' statements. True, corroboration often strengthens a warrant application; but corroboration is typically required only when the officer otherwise lacks "any indicia of the informants' reliability." *Coffee*, 434 F.3d at 893 (cleaned up). Here, Day found fentanyl in the informants' car, which partially corroborated their story. The informants' detailed accounts also included several indicia of reliability, so further corroboration was unnecessary. *See Dyer*, 580 F.3d at 392.

Finally, Smith asserts that *United States v. Higgins*—where we held that an affidavit lacked probable cause—controls the outcome here. 557 F.3d 381, 390 (6th Cir. 2009), *overruled on other grounds by DePierre v. United States*, 564 U.S. 70, 79 (2011). But in *Higgins*, the informant had never seen drugs or evidence of other crimes in the defendant's apartment. *Id.* at 390. Here, the warrant had a much more substantial basis.

Separately, Smith argues that the district court erred by denying him a *Franks* hearing. But Smith did not preserve a right to appeal that (pre-plea) ruling in his plea agreement, so he has waived that issue. *See United States v. Riccardi*, 989 F.3d 476, 489 (6th Cir. 2021).

The district court's judgment is affirmed.