RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 18a0056p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

*v.*

WILLIAM EUGENE HINES,

*Defendant-Appellee.*

No. 17-5893

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 3:16-cr-00005-1—Joseph H. McKinley Jr., Chief District Judge.

Argued:  March 8, 2018

Decided and Filed:  March 22, 2018

Before:  MOORE, COOK, and McKEAGUE, Circuit Judges.

_____

## COUNSEL

**ARGUED:**  Amanda B. Harris, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant.  Michael R. Mazzoli, COX & MAZZOLI PLLC, Louisville, Kentucky, for Appellee.  **ON BRIEF:**  Amanda B. Harris, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., Terry M. Cushing, UNITED STATES ATTORNEY'S OFFICE, Louisville, Kentucky, for Appellant.  Michael R. Mazzoli, COX & MAZZOLI PLLC, Louisville, Kentucky, for Appellee.

_____

## OPINION

_____

COOK, Circuit Judge.  Not all search warrant affidavits include the same ingredients. It is the mix that courts review to decide whether evidence generated from the search may be

used or must be suppressed. Some affidavits describe in fine detail a confidential informant's reliability, whereas others emphasize the tipster's basis of knowledge. Some discuss controlled drug buys by police officers looking to corroborate a tip, and others spotlight a suspect's criminal history. There isn't a singular formula; we consider the affidavit proper if, in its totality, it sufficiently demonstrates probable cause for that search warrant.

Finding the affidavit in this case insufficient to establish probable cause, the district court suppressed evidence recovered during a search. We decide that the totality of the circumstances dictates otherwise, however, and REVERSE.

## I.

## A.

On December 15, 2015, Louisville Metropolitan Police Department Detective Daniel Evans submitted to Kentucky Circuit Court Judge McKay Chauvin an affidavit for a search warrant of the single-family residence at 668 Eastlawn Avenue in Louisville. The affidavit set forth the following information.

In July 2015, Louisville law enforcement officers learned from a "reliable confidential informant"—referred to as "CS1" throughout the affidavit, without any other identifying information—that William Hines was "selling large amounts of heroin" out of 668 Eastlawn. Surveillance of that house, owned by Hines's mother, over the ensuing months tracked Hines's regular comings and goings.

On December 14, 2015, CS1 informed Detective Evans that CS1 "had seen an amount of heroin at" 668 Eastlawn that day. Also on December 14, Detective Evans received further information about Hines "from another reliable confidential source"—referred to as "CS2" in the affidavit. CS2 said Hines had contacted him that day and proposed that they meet at a club called Legends to discuss an incoming heroin shipment. After he met with Hines, CS2 informed Detective Evans that Hines wanted CS2 to meet him at 668 Eastlawn the following day, where Hines would provide CS2 with heroin. According to CS2, he had received heroin from Hines numerous times and was always instructed to meet at 668 Eastlawn.

Owing to the information from CS1 and CS2, and prior to the meeting at Legends, officers set up surveillance around 668 Eastlawn. They saw Hines leave the house, stop briefly at a liquor store, and then drive to the club. When Hines left the liquor store, surveilling officers observed him "drive in a manner consistent with narcotics traffickers"—"he drove opposite of traffic down a one-way street before entering a dark, narrow alley" where officers believed Hines was looking for any tailing law enforcement.

Detective Evans also independently investigated Hines's history as a drug trafficker and summarized it in the affidavit. Hines had been on the Louisville DEA's radar since at least 2007, when wire intercepts identified Hines as a kilogram-quantity cocaine trafficker. Additional wiretaps in 2012 helped the Louisville DEA peg Hines as a significant heroin trafficker. That summer, officers seized $33,500 from Javier Rodriguez outside 668 Eastlawn, which they believed to be payment from Hines for a kilogram of cocaine. In a 2015 interview with officers, Rodriguez said that he had previously provided Hines with kilogram-quantities of cocaine and heroin.

**B.**

The state judge signed a search warrant for 668 Eastlawn early in the afternoon of December 15, which Detective Evans and other officers executed later that day. They recovered, among other things, 3.72 pounds of cocaine, 2.08 pounds of heroin, $16,085 in cash, and a digital scale with plastic baggies.

Based on the fruits of the search, a federal grand jury charged Hines with possession with intent to distribute at least 100 grams of heroin and at least 500 grams of cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B). Hines moved to suppress the evidence recovered at 668 Eastlawn. His arguments supporting suppression shifted but ultimately converged on two: the affidavit did not establish probable cause for the search warrant, and the good-faith exception to the exclusionary rule did not apply.

The district court granted Hines's motion to suppress. The court found that "the search warrant affidavit does not establish the reliability of the confidential informants in this case, and as such, it lacks probable cause." It held that the affidavit's assertion that both CS1 and CS2

were "reliable" was "clearly insufficient" to establish the informants' reliability, noting the conclusory nature of the description and that Detective Evans neither provided the informants' identities to the state judge nor indicated in the affidavit that either informant had previously supplied reliable information. The court also found no independent police corroboration of the confidential informants' statements placing drugs at 668 Eastlawn; "[t]he only information police were able to independently corroborate was that Hines did in fact go to the night club CS2 specified they would meet at," which, according to the court, was the "*least* significant part of CS2's story."

Next, the court determined the good-faith exception to the exclusionary rule to be inapplicable because "the officer who wrote the search warrant affidavit and applied for and received the warrant was the same officer who executed it." Because, the court explained,

> the warrant lacked the necessary indicia that the statements by CS1 or CS2 were reliable . . . , it was unreasonable for Detective Evans to have relied on the search warrant affidavit that he himself prepared, as he was aware of its contents and should have known that more information was required to establish the reliability of the confidential informants . . . .

The Government timely appealed. We first address whether the affidavit established probable cause, and then proceed to the good-faith inquiry.

## II.

### A.

The Fourth Amendment requires warrants to be supported by probable cause. "In order to demonstrate probable cause sufficient to justify a search warrant, the proponent must submit an affidavit that 'indicate[s] a fair probability that evidence of a crime will be located on the premises of the proposed search.'" *United States v. Dyer*, 580 F.3d 386, 390 (6th Cir. 2009) (quoting *United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir. 2005)) (alteration in original). "A court must look to the 'totality of the circumstances,' including a confidential informant's 'veracity, reliability, and basis of knowledge,' in order to answer 'the commonsense, practical question' of whether an affidavit is sufficient to support a finding of probable cause." *United States v. May*, 399 F.3d 817, 822 (6th Cir. 2005) (quoting *Illinois v. Gates*, 462 U.S. 213, 230

(1983)).  Although the court is "limited to examining the information contained within the four corners of the affidavit," *Dyer*, 580 F.3d at 390, line-by-line scrutiny of the underlying affidavit is improper when reviewing the issuing judge's probable cause determination, *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (en banc).

We assess the district court's decision to suppress evidence by reviewing the court's factual findings for clear error and its legal determinations—including whether probable cause existed—de novo.  *United States v. Dunning*, 857 F.3d 342, 346 (6th Cir. 2017); *United States v. Lazar*, 604 F.3d 230, 232–33 (6th Cir. 2010).  "Given the de novo standard of review, where, as here, the district court reviewed the [issuing judge's] probable cause determination, we owe the district court's conclusion no particular deference."  *United States v. Brown*, 732 F.3d 569, 572–73 (6th Cir. 2013) (citing *United States v. Leake*, 998 F.2d 1359, 1362–63 (6th Cir. 1993)).  "In reviewing a state magistrate's determination of probable cause, this court pays great deference to a magistrate's findings, which should not be set aside unless arbitrarily exercised."  *United States v. Washington*, 380 F.3d 236, 240 (6th Cir. 2004) (quoting *Leake*, 998 F.2d at 1363).

**B.**

The Government argues that the district court's ruling flouts the totality-of-the-circumstances approach to determining the affidavit's sufficiency.  We agree.

Although the affidavit neither named the confidential informants nor offered how they previously provided accurate information, it described both informants' bases of knowledge for their tips about Hines's trafficking drugs out of 668 Eastlawn.  At least as of July 2015, CS1 knew that Hines "was actively selling large amounts of heroin from" 668 Eastlawn and informed law enforcement as much.  Then, on December 14, Detective Hines learned from CS1 that CS1 saw heroin at 668 Eastlawn that very day.  The basis of CS2's knowledge is even stronger.  CS2 received heroin from Hines "on numerous occasions in the past, and stated that he is always instructed to come to 668 Eastlawn."  On December 14, CS2 told Detective Evans that Hines had contacted him earlier in the day "regarding [Hines] receiving a shipment of heroin" and to say "that he would like to speak with CS2 at Legends Nightclub to discuss the shipment."  After CS2

met with Hines, CS2 contacted Detective Evans "and informed that [Hines] wanted CS2 to come to his residence, 668 Eastlawn Avenue, at [sic] on December 15, where [Hines] will provide CS2 with a large amount of heroin."

The district court dismissed these statements as "merely creat[ing] a circle of speculation." Instead, it should have credited them as illustrating CS1's and CS2's bases of knowledge regarding drug trafficking at 668 Eastlawn. For example, compare this affidavit to the one upheld in *United States v. Moore*, 661 F.3d 309 (6th Cir. 2011). The *Moore* affidavit contained one paragraph noting that an unnamed informant "stated that he/she has been at the above described residence within the past five (5) days . . . and has seen the above described storing and selling cocaine at the above named address." 661 F.3d at 311. Here, the two informants had as much or more knowledge of Hines's heroin stash at 668 Eastlawn. CS1 saw heroin at 668 Eastlawn the day before the search; Hines contacted CS2 to discuss a shipment of heroin and later told him to come to 668 Eastlawn for a hand-off. The district court discredited this information as devoid of details like quantity or location in the house. But the *Moore* informant likewise never specified the quantity of drugs or their location within the residence to be searched. *Id.* And even though CS2 did not say that he saw heroin at Hines's residence immediately before the search, he admitted that he had always picked up heroin from Hines at 668 Eastlawn in the past—the same place Hines told CS2 to visit on December 15.

So even though the affidavit did not address in detail the reliability of CS1 and CS2, it gave appreciable attention to the bases of their knowledge. *See United States v. Coffee*, 434 F.3d 887, 895 (6th Cir. 2006) (crediting an affidavit that "contains no averments that the informant was reliable based on prior contacts" but "does state that the CI had made several purchases in the past from [the suspect] at the specified address"). We do not evaluate an informant's veracity, reliability, and basis of knowledge independently; more of one compensates for less of the others. *United States v. Ferguson*, 252 F. App'x 714, 721 (6th Cir. 2007). Fatally faulting this affidavit for failing to name the informants or explain that they previously gave accurate information frustrates the totality-of-the-circumstances review we must conduct. *See United States v. Martin*, 526 F.3d 926, 936 (6th Cir. 2008) (explaining that we review the totality of the

circumstances to make a commonsense, rather than "hyper-technical, determination of whether probable cause is present").

Granted, the district court didn't end its analysis there; it reviewed the affidavit for independent police corroboration of the tips. The court declared that "[t]he only information police were able to independently corroborate was that Hines did in fact go to the night club CS2 specified they would meet at." Calling this "the *least* significant part of CS2's story," the court concluded that the affidavit lacked substantial independent police corroboration to support the probable-cause determination. We disagree.

For one, given the informants' bases of knowledge, substantial independent police corroboration was unnecessary. *See Dyer*, 580 F.3d at 392 ("[O]nly when no substantial supporting evidence exists within the four corners of the affidavit as to the informant's reliability do courts require substantial independent police corroboration."). In any event, officers independently—and sufficiently—corroborated the tips. After CS1 informed officers in July 2015 that Hines was selling large quantities of heroin out of 668 Eastlawn, DEA and police officers "conducted surveillance at the residence on occasion" and saw Hines "arrive and depart the residence with regularity." Moreover, per the tips from CS1 and CS2 on December 14, officers re-established surveillance around 668 Eastlawn. They witnessed Hines leave the house and drive to Legends that evening—the club at which CS2 said Hines wanted to meet to discuss a shipment of heroin. The district court brushes this aside as mere corroboration that Hines went to a location mentioned by CS2, but that misses a key point: CS2 specified that Hines wanted to meet at Legends *to discuss a shipment of heroin*. And if "an informant is right about some things, he is more probably right about other facts" regarding the suspect's illegal activity. *Gates*, 462 U.S. at 244 (quoting *Spinelli v. United States*, 393 U.S. 410, 427 (1969) (White, J., concurring)). True, as the district court implies, the officers did not set up a controlled buy or see drugs in the house. But our precedent does not require independent corroboration of *criminal* activity. Corroboration of specific nonobvious information that, although innocent on its own, meshes with an informant's tips is similarly relevant. *See, e.g., Dyer*, 580 F.3d at 392–93 (crediting police corroboration of informant's descriptions of suspect's cars and physical appearance); *May*, 399 F.3d at 825 (crediting as independent police corroboration the affidavit's

averment that surveillance team saw a particular individual involved in unrelated investigation entering suspect's residence).

In addition, Detective Evans independently investigated law enforcement's previous dealings with Hines, learning that Hines had "a prior criminal history for narcotics possession and trafficking." And Detective Evans laid it out in the affidavit—that 668 Eastlawn served as a drug distribution point for Hines since 2012, that Javier Rodriguez admitted to officers that he previously provided drugs to Hines, that "[s]ource information as recently as December of 2015" indicated Hines to be selling kilos of heroin in Louisville—thereby providing the issuing judge with further independent corroboration of the informants' leads. *See Dyer*, 580 F.3d at 392 ("Although a defendant's criminal history is not dispositive, it is relevant to the probable cause inquiry." (internal citation omitted)); *Martin*, 526 F.3d at 937 (noting that defendant's criminal history—included in the affidavit—constituted "independent corroboration" that "provided other indicia of reliability").[1]

\* \* \*

At bottom, we judge an affidavit "on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." *Allen*, 211 F.3d at 975. Here, the mix of ingredients passes muster. The totality of the circumstances convinces us that this affidavit demonstrated a specific and concrete nexus between 668 Eastlawn and the evidence sought, and thus established probable cause for the search.

**III.**

Even if the affidavit was defective, the district court should have denied Hines's suppression motion because the officers "seized [the evidence] in reasonable, good-faith reliance" on the search warrant. *United States v. Leon*, 468 U.S. 897, 905 (1984).

---

[1]The affidavit additionally informed that the surveillance team "observed [Hines] drive in a manner consistent with narcotics traffickers" upon departing the liquor store for Legends by driving the wrong way down a one-way street before entering an alleyway. The district court correctly noted that this observation has limited corroborative effect because CS2 didn't inform officers that Hines would drive like this. Still, that officers observed Hines drive in a manner consistent with drug traffickers *on the way to discuss a possible heroin shipment* with CS2 is something we consider in our totality-of-the-circumstances approach to determining the sufficiency of the affidavit.

**A.**

The Supreme Court created an exception to the exclusionary rule because "[c]ourts should not . . . suppress 'evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant.'" *United States v. Carpenter*, 360 F.3d 591, 595 (6th Cir. 2004) (en banc) (quoting *Leon*, 468 U.S. at 922). "Following *Leon*, courts presented with a motion to suppress claiming a lack of probable cause must ask whether a reasonably well trained officer would have known that the search was illegal despite the [issuing judge's] decision. Only when the answer is 'yes' is suppression appropriate." *United States v. White*, 874 F.3d 490, 496 (6th Cir. 2017) (internal quotation marks and citations omitted).

> The good-faith exception is inapplicable in four circumstances:
>
> (1) where the issuing magistrate was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth; (2) where the issuing magistrate wholly abandoned his judicial role and failed to act in a neutral and detached fashion, serving merely as a rubber stamp for the police; (3) where the affidavit was nothing more than a "bare bones" affidavit that did not provide the magistrate with a substantial basis for determining the existence of probable cause, or where the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where the officer's reliance on the warrant was not in good faith or objectively reasonable, such as where the warrant is facially deficient.

*United States v. Hython*, 443 F.3d 480, 484 (6th Cir. 2006) (citing *Leon*, 468 U.S. at 923). We review de novo the applicability of the good-faith exception. *United States v. Abernathy*, 843 F.3d 243, 257 (6th Cir. 2016).

**B.**

Neither the district court nor Hines suggests that Detective Evans misled the issuing judge by including in the affidavit information he knew to be false. Nor do they contend that the issuing judge simply rubber-stamped the affidavit out of a favorable predisposition toward law enforcement. Rather, the district court eschewed applying the good-faith exception because Detective Evans both wrote the underlying affidavit and executed it. According to the court, "it was unreasonable for Detective Evans to have relied on the search warrant affidavit that he

himself prepared, as he was aware of its contents and should have known that more information was required to establish the reliability of the confidential informants." We conclude otherwise.

First, that Detective Evans both wrote the underlying affidavit and executed the search warrant is not enough, standing alone, to preclude application of the good-faith exception. *See, e.g., United States v. Kinison*, 710 F.3d 678, 686–87 (6th Cir. 2013). As the Government notes, in past cases this court applied the good-faith exception where the affiant executed the search warrant. *E.g., Moore*, 661 F.3d at 311, 314–15; *United States v. McCraven*, 401 F.3d 693, 695, 698 (6th Cir. 2005).

Second, this was not a bare-bones affidavit because it was not a conclusory affidavit. *White*, 874 F.3d at 496. A bare-bones affidavit "asserts only the affiant's belief that probable cause existed. It provides nothing more than a mere guess that contraband or evidence of a crime would be found, either completely devoid of facts to support the affiant's judgment that probable cause exists, or so vague as to be conclusory or meaningless." *Id.* (internal quotation marks and citations omitted). Both informants offered concrete information that tied drug-dealing to 668 Eastlawn in the days immediately preceding the warrant's execution. CS1 saw heroin inside 668 Eastlawn the day before the search; CS2 told Detective Evans about his conversation with Hines regarding a large quantity of heroin to be provided at 668 Eastlawn; and every time CS2 previously received heroin from Hines, it was at 668 Eastlawn. Such details make this affidavit different from the one at issue in *Mills v. City of Barbourville*, 389 F.3d 568, 575–76 (6th Cir. 2004), which failed to state "why [the address] is being searched" or indicate that officers "performed any investigation to determine whether plaintiff lived at" the address. *United States v. Baxter*, 889 F.2d 731 (6th Cir. 1989), on which the district court relied, is similarly distinguishable. There, the affidavit relied on a confidential informant who was simply an anonymous caller. 889 F.2d at 733. This court would not apply the good-faith exception because it found the affidavit to be bare-bones and determined that the officer "had to realize that the source of the information against defendant was an unknown party who was unavailable and could not be demonstrated to be 'reliable.'" *Id.* at 734.

None of those problems plagues the affidavit or affiant in the instant case. Detective Evans's affidavit was not "*so* lacking in indicia of probable cause that, despite a judicial officer

having issued a warrant, *no* reasonable officer would rely on it." *White*, 874 F.3d at 497 (citing *United States v. Helton*, 314 F.3d 812, 824 (6th Cir. 2003)). And even if it did fall short of establishing probable cause, this affidavit was not "completely devoid of any nexus" connecting Hines's house with illegal activity. *Carpenter*, 360 F.3d at 595. Indeed, this affidavit contained more facts connecting 668 Eastlawn with evidence of drug trafficking than did the affidavit upheld in *Carpenter* connecting a residence with marijuana patches. *See id.* at 593, 596 (affidavit based on pilot's observation of road connecting marijuana plants and a residence satisfied *Leon* good-faith exception).

The only precedent on which Hines relies to argue the unavailability of the good-faith exception is the distinguishable *United States v. Weaver*, 99 F.3d 1372 (6th Cir. 1996). The affiant-officer in *Weaver* used a "preprinted affidavit" that "was composed of boilerplate text with a few open spaces for" individuals' names, a brief description of the house to be searched, the word "marijuana," and the date of the affidavit—in total, a classic bare-bones affidavit. 99 F.3d at 1375–76. Turning to the good-faith exception, the *Weaver* court explained that the affiant-officer "should have realized that he needed to do more independent investigative work to show a fair probability that this suspect was either possessing, distributing, or growing marijuana," given that he had "little firsthand information and no personal observations." *Id.* at 1380. Here, however, Detective Evans corroborated these informants' tips by independently investigating Hines's lengthy trafficking history and observing Hines leave 668 Eastlawn to meet CS2 at Legends as CS2 said would happen.

\* \* \*

"[T]he exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." *Leon*, 468 U.S. at 916. The facts here do not engender fears of police misconduct. Even if this affidavit did not establish probable cause, therefore, the fruits of the search would nevertheless survive suppression through application of the good-faith exception.

**IV.**

For these reasons, we REVERSE the district court's grant of Hines's suppression motion and REMAND for proceedings consistent with this opinion.