*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MARCUS LAMOND POWELL,

Defendant-Appellant.

UNPUBLISHED
February 4, 2020

No. 345559
Ottawa Circuit Court
LC No. 17-041204-FH

Before: MARKEY, P.J., and GLEICHER and M.J. KELLY, JJ.

GLEICHER, J. (*concurring*).

I concur with the majority's conclusion that the good-faith exception to the exclusionary rule applies in this case. I write separately because I respectfully disagree with the majority's analysis.

Suppression of illegally obtained evidence "is not an automatic consequence of a Fourth Amendment violation." *Herring v United States*, 555 US 135, 137; 129 S Ct 695; 172 L Ed 2d 496 (2009). When a search is conducted in reasonable and good-faith reliance on a search warrant the exclusionary rule does not apply, even if the warrant is later held invalid. *United States v Leon*, 468 US 897, 920-921; 104 S Ct 3405; 82 L Ed 2d 677 (1984). When considering whether this good-faith exception applies, courts must focus on "the *objectively* ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Id*. at 922 n 23 (emphasis added). The Supreme Court repeatedly emphasized in *Leon* that the inquiry is an objective one: "We conclude that the marginal or nonexistent benefits produced by suppressing evidence obtained in *objectively reasonable reliance* on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." *Id*. at 922 (emphasis added). "[T]he officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be *objectively* reasonable[.]" *Id*. (emphasis added).

*Leon* advanced four circumstances in which an officer's reliance on a warrant would not be objectively reasonable. Defendant relies on this one: "Nor would an officer manifest objective good faith in relying on a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id*. at 923 (cleaned up).[1] This sort of affidavit offers the reviewing magistrate only "bare bones" instead of a "substantial basis" for discerning "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v Gates*, 462 US 213, 238; 103 S Ct 2317; 76 L Ed 2d 527 (1983). "An affidavit that states suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge, is a 'bare bones' affidavit." *United States v Weaver*, 99 F3d 1372, 1378 (CA 6, 1996). *Leon* posits that an affidavit may "fall short" of describing probable cause, yet include enough information to qualify for the good-faith exception. *United States v Hines*, 885 F3d 919, 928 (CA 6, 2018).

Here, the trial court determined that the affidavit signed by Detective John Rathjen "absolutely [did] not establish the necessary probable cause to issue the search warrant," and I agree. The next question is whether the affidavit was so deficient that the officers who executed it could not have been acting in good faith.

Although defendant's argument in support of suppression centered on whether "the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," the trial court analyzed the facts under a different good-faith rubric: whether "the issuing magistrate wholly abandoned his judicial role and failed to act in a neutral and detached fashion, serving merely as a rubber stamp for the police[.]" *United States v Hython*, 443 F3d 480, 484 (CA 6, 2006). The trial court applied this prong of the good-faith exception, reasoning:

> The officer writes in here, although it's incomplete, that there were two separate purchases of narcotics at the residence and that [Detective Rathjen] received a tip from an anonymous informant about a month before. There was obviously a history of drug activity involving [defendant] and also there were other informants confirming his residence. So when you have multiple situations and you take those multiple situations to a district court magistrate and say I've got a person who's been selling drugs, he has a history of selling drugs, I got a tip he's selling drugs, there's two informants selling drugs, and other informants say he lives there, in that situation the magistrate has not wholly abandoned his judicial role and acted as an agent of law enforcement, so that does not apply.

---

[1] This opinion uses the parenthetical (cleaned up) to improve readability without altering the substance of the quotation. The parenthetical indicates that nonsubstantive clutter such as brackets, alterations, internal quotation marks, and unimportant citations have been omitted from the quotation. See Metzler, *Cleaning Up Quotations*, 18 J App Pract & Process 143 (2017).

The majority's analysis barely addresses any of *Leon*'s exceptions to good faith. Rather, relying primarily on a federal district court opinion from the Southern District of New York, the majority holds that the warrant was executed in good faith because "[t]he officer had personal knowledge regarding the controlled buys, and he personally knew that the unnamed purchaser was credible and that the information was reliable because the officer surveilled the transactions."

By engaging in a *subjective* analysis focused on the officer's personal knowledge, the majority strays far from the path *Leon* established. Indeed, the majority's legal error could not be plainer: "[W]e . . . eschew inquiries into the subjective beliefs of law enforcement officers who seize evidence pursuant to a subsequently invalidated warrant . . . . Accordingly, our good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon*, 468 US at 923 n 23. See also *United States v Laughton*, 409 F3d 744, 751 (CA 6, 2005) ("[A] determination of good-faith reliance, like a determination of probable cause, must be bound by the four corners of the affidavit.").[2] By considering what was in the officer's head rather than within the affidavit, the majority disregards *Leon* and slams the door on virtually all good-faith exceptions.

Distorting *Leon* is unnecessary. Applying an objective standard, I reach the same ultimate conclusion as did the trial court and the majority. Although the affidavit lacks any allegations regarding the reliability of the informant or the identity of WE-2441, the totality of the circumstances described in the affidavit, when read in a common-sense fashion, establishes "a minimally sufficient nexus between the illegal activity and the place to be searched." *United States v Carpenter*, 360 F3d 591, 596 (CA 6, 2004). The United States Court of Appeals for the Sixth Circuit has found the "nexus" adequate to justify good faith when "the reviewing court is able to identify in the averring officer's affidavit some connection, regardless of how remote it may have been—some modicum of evidence, however slight—between the criminal activity at issue and the place to be searched[.]" *United States v White*, 874 F3d 490, 497 (CA 6, 2017) (cleaned up). I would adopt the same general approach.

The affidavit contained unsubstantiated allegations that defendant lived at the home for which the warrant was sought, and that two controlled buys occurred there. That should not have been enough to establish probable cause in the mind of a magistrate, but I cannot conclude that a reasonably trained officer would have believed the averments so deficient as to render

---

[2] The majority also suggests that only "governmental misconduct" can overcome the good-faith exception. I respectfully disagree with this premise. Simple negligence can also eliminate good faith. See *Groh v Ramirez*, 540 US 551, 565; 124 S Ct 1284; 157 L Ed 2d 1068 (2004); *Massachusetts v Sheppard*, 468 US 981, 988-989; 104 S Ct 3424; 82 L Ed 2d 737 (1984).

unreasonable a belief that probable cause existed for the search.[3]  On that basis, I concur with the majority.


/s/ Elizabeth L. Gleicher

---

[3] The majority asserts: "We would hope … that a reasonably trained officer would have found the affidavit deficient such that it would be unreasonable to believe that probable cause existed." Respectfully, this statement demonstrates that the majority misapprehends the good faith exception.  If an officer executing the warrant believes that the affidavit in support of a warrant failed to establish probable cause for a search, the officer has executed the warrant in *bad* faith. Once again, here is the controlling language from *Leon*: "Nor would an officer manifest objective good faith in relying on a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon* at 923.  The majority's analysis bears no relationship to *Leon* and in fact contradicts it.