RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0351p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

No. 19-3599

*v.*

JULIUS D. RUFFIN,

*Defendant-Appellant*.

───────────────

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:18-cr-00672-1—James S. Gwin, District Judge.

Argued: October 22, 2020

Decided and Filed: November 3, 2020

Before: COOK, BUSH, and NALBANDIAN, Circuit Judges.

───────────────

**COUNSEL**

**ARGUED:** Claire R. Cahoon, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Toledo, Ohio, for Appellant. Vanessa Healy, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee. **ON BRIEF:** Claire R. Cahoon, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Toledo, Ohio, for Appellant. Robert F. Corts, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

───────────────

**OPINION**

───────────────

JOHN K. BUSH, Circuit Judge. Julius Ruffin pleaded guilty to possession with intent to distribute a mixture of heroin and fentanyl, which he had hidden in his rectum. He appeals the district court's denial of his motion to suppress those drugs, arguing that Drug Enforcement

Administration ("DEA") agents did not show probable cause to obtain the warrant and that the manner of the search violated the Fourth Amendment. For the reasons below, we **AFFIRM** the district court's judgment.

## I. BACKGROUND

### A.    The Investigation

In October 2018, an unnamed informant told the DEA that Ruffin planned to drive from Lorain, Ohio to Columbus to purchase heroin from unknown Mexican drug traffickers. The informant said that she[1] and Ruffin would travel in a black SUV, provided the license plate number, and promised to stay in contact throughout the trip. She told the DEA when she and Ruffin departed from Lorain, then alerted the DEA agents when they were fifteen minutes from the address. The agents then set up surveillance and saw Ruffin and the informant enter the house together. Three hours later, the agents saw two Hispanic men arrive and enter the house briefly. The informant messaged the agents from inside the house to tell them that Ruffin had purchased a plastic bag of heroin from the men who had just left. Then Ruffin told the informant that he needed to go to the bathroom before he left. She saw Ruffin holding a plastic bag as he went into the bathroom, where he stayed for about twenty minutes. From the bathroom, Ruffin went to his car. The informant apprised the agents of these events in real time. The agents then saw Ruffin drive off.

They followed Ruffin until he committed a traffic infraction, then—with the help of state police—pulled him over. A drug dog alerted on the car, providing probable cause for a search. But the search of both the car and Ruffin's person yielded no evidence, leading the agents to suspect that Ruffin had concealed the drugs inside his body. They held Ruffin while they sought a search warrant for a body cavity search. An Ohio magistrate judge issued the warrant to search "[o]n the person or in a cavity or carried property of Julius Decarlos Ruffin."

---

[1]The affidavit avoids gender pronouns (using he/she) to obscure the source's identity. For convenience's sake, we will default to she.

**B.      The Search**

Warrant in hand, the police took Ruffin to the hospital for medical staff to conduct the search.  When the doctor came in, the agents suggested to him that he use his finger to search Ruffin's rectum.  When the doctor declined, one DEA agent joked that he would do the search, but only after taking "a couple shots."  Eventually a nurse volunteered to conduct the search, which she did with Ruffin shackled at the legs.  One agent remained in the room during the examination.  The parties dispute whether the nurse found anything during that examination, with the nurse's notes saying that she felt something in the anal cavity, while Ruffin claims that the nurse said "I do not feel anything."

After that examination, the nurse inserted an instrument to visually examine the inside of Ruffin's rectum.  Here, too, the parties disagree: Ruffin claims the nurse searched with the instrument twice and did not see anything; the nurse's notes indicate that she searched once and saw a foreign object that looked like a piece of plastic wrap.  Either way, when the nurse failed to retrieve anything, the treating physician ordered an X-ray.  Although the radiologist did not see any foreign bodies on the X-ray, the treating physician saw three separate circular objects, so he ordered the nurse to perform soap suds enemas until the objects came out.  The parties dispute the number of enemas—Ruffin says four, the nurse's notes say two.  Ultimately, Ruffin released three golf-ball-sized bags of heroin and fentanyl.

**C.      Procedural History**

The government charged Ruffin with possession of heroin and fentanyl with intent to distribute, and Ruffin moved to suppress the drugs.  The district court conducted a hearing, then denied the motion.  First, it concluded that although the evidence "may not be enough" for probable cause, it did not need to resolve that question because the *Leon* good-faith exception would apply either way.  Then, analyzing the three-factor test for body searches, the district court concluded that the three factors "weigh slightly in favor of the search's reasonableness."  It held that although the decision to begin with a rectal examination rather than starting with an X-ray "seems illogic[al]," the balance of the factors favored reasonableness because the search posed minimal safety risks, the DEA had a warrant, Ruffin was not incapacitated, and there were

limited other sources of evidence. Ruffin then entered a conditional guilty plea, preserving the right to appeal the denial of his motion to suppress.

## II.  DISCUSSION

When reviewing a district court's ruling on a motion to suppress, we review its factual findings for clear error and its legal conclusions de novo. *United States v. Hines*, 885 F.3d 919, 924 (6th Cir. 2018); *United States v. Banks*, 684 F. App'x 531, 535 (6th Cir. 2017).

### A.  Probable Cause

Probable cause exists when an affidavit shows a "fair probability" that the police will find evidence in the place they seek to search. *Hines*, 885 F.3d at 923 (quoting *United States v. Dyer*, 580 F.3d 386, 390 (6th Cir. 2009)). When a magistrate judge has granted a warrant, we ask only whether the magistrate had a "substantial basis" for finding probable cause. *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (en banc) (quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983)). In answering that question, we are limited to the four corners of the affidavit. *Hines*, 885 F.3d at 923. But our analysis of the affidavit is not "hypertechnical" or "line-by-line." *Allen*, 211 F.3d at 973 (quoting *Gates*, 462 U.S. at 246 n.14). Instead, we respect the issuing magistrate's findings and reasonable inferences, reversing only if the magistrate "arbitrarily exercised" his or her discretion. *Hines*, 885 F.3d at 924 (quoting *United States v. Washington*, 380 F.3d 236, 240 (6th Cir. 2004)).

When an affidavit relies heavily on information from a confidential informant, we must first examine the informant's reliability. *See United States v. Crawford*, 943 F.3d 297, 306 (6th Cir. 2019). If, as here, a law enforcement officer is working with a new informant, the officer must take steps to verify that informant's reliability. *Id.* at 306–07. We look to the totality of the circumstances to determine whether an officer sufficiently verified the informant's honesty and "basis of knowledge." *Hines*, 885 F.3d at 923 (quoting *United States v. May*, 399 F.3d 817, 822 (6th Cir. 2005)).

Here, the DEA agents saw the informant enter the house with Ruffin, establishing a clear basis of knowledge. And they corroborated the informant's tips as to the car description, travel

time, destination in Columbus, and approximate race of the men who met with Ruffin.  That corroboration of the informant's honesty, combined with the informant's presence at the scene of the drug deal, suffices to establish her reliability.

Given the informant's reliability, three facts in the affidavit, taken together, establish a fair probability that the agents would find the drugs in Ruffin's body.  First, immediately after the drug deal where Ruffin received a plastic bag containing heroin, Ruffin went to the bathroom holding a plastic bag, stayed there for twenty minutes, and then emerged empty-handed.[2] Second, Ruffin went directly to his car after leaving the bathroom, so he had little to no opportunity to stash the drugs he had just purchased anywhere other than his person or the bathroom at the buy house.  And third, a drug dog alerted the police to the presence of drugs in the car, but they failed to find the drugs either in the car or on Ruffin's person.  Although the police did not offer evidence showing that when a drug dog alerts and the police do not find anything the drugs are usually in the person's body, that is a plausible inference that the magistrate could have drawn in light of the other facts.  Taken together, these facts create a "fair probability" that Ruffin had concealed the drugs in his body, so the magistrate judge did not "arbitrarily exercise" his or her discretion in finding probable cause.  *See Hines*, 885 F.3d at 924.

The district court declined to rule on probable cause because it thought that "[b]asic fairness requires the government to present stronger-than-usual support to justify such a necessarily invasive body search."  It did not cite any precedent to support that assertion, and indeed that standard would be unusual in Fourth Amendment jurisprudence.  The probable cause standard does not turn on the level of privacy interests associated with the place to be searched. *Compare Hines*, 885 F.3d at 923–24 (home), *and United States v. Bass*, 785 F.3d 1043, 1048–49 (6th Cir. 2015) (cell phone), *with United States v. Dyer*, 580 F.3d 386, 390 (6th Cir. 2009) (rental cabin), *and United States v. Woosley*, 361 F.3d at 924, 927–28 (6th Cir. 2004) (business).  So we should not apply a stricter standard here than we would in another probable-cause case.  Instead, we protect the interest in bodily privacy by enforcing a separate reasonableness requirement on

---

[2]The government claims that the source saw Ruffin enter the bathroom "with the drugs in his hand," but the affidavit says only that Ruffin went into the bathroom "with a sandwich bag type of plastic bag."

the manner in which law enforcement searches the body. *See United States v. Booker*, 728 F.3d 535, 546 (6th Cir. 2013). We turn now to that inquiry.

**B.          Reasonableness of the Search**

The Supreme Court has made clear that "any compelled intrusion into the human body implicates significant, constitutionally protected privacy interests." *Missouri v. McNeely*, 569 U.S. 141, 159 (2013). To determine whether the intrusion is reasonable, we apply a three-part balancing test that weighs: (1) the extent of the threat to the individual's health and safety, (2) the extent of the intrusion on the individual's "dignitary interests in personal privacy and bodily integrity," and (3) law enforcement's need for the evidence. *Booker*, 728 F.3d at 546–47 (quoting *Winston v. Lee*, 470 U.S. 753, 761–62 (1985)). We have two precedents applying this test: *Booker*, which found a search unconstitutional, *id.* at 546–47, and *United States v. Banks*, which found a search constitutional, 684 F. App'x 531, 537 (6th Cir. 2017). Although Ruffin's case falls between the two, it lies closer to *Banks* than *Booker*.

In considering the first factor, *Booker* held that the doctor's decision to paralyze and intubate Booker presented a risk of harm that tipped the factor in Booker's favor. 728 F.3d at 546. *Banks*, on the other hand, held that taking an X-ray and giving Banks laxatives posed no risk of harm, so the first factor favored the government. 684 F. App'x at 537. Here, the district court found that the "rectal exams, x-rays, and enemas posed little to no risk to Ruffin independent from the obvious dangers Ruffin accepted by concealing drugs in his rectum." So the first factor favors the government.

On the second factor, *Booker* held that the affront to personal dignity from being involuntarily "paralyzed, intubated, and anally probed," all while naked and handcuffed, was immense. 728 F.3d at 546–47. But it indicated that a case where the police obtained a warrant would be materially different. *Id.* at 547. In *Banks*, although we acknowledged that administering an X-ray and laxatives would have intruded on Banks's dignitary interests, we suggested that the presence of a warrant decreased the level of dignitary intrusion. 684 F. App'x at 537. Here, the doctor never incapacitated Ruffin, which *Booker* considered the most egregious intrusion on dignity, and the DEA had a warrant. But the agents and doctor did

choose, instead of starting with an X-ray, to begin with a rectal examination. And they kept Ruffin shackled or handcuffed throughout, even as they gave him the soap suds enemas. What's more, Ruffin says one agent joked about the intrusions, an unnecessary additional affront to his dignitary interests. Those facts tip the second factor in Ruffin's favor.

On the third factor, *Booker* held that although "reasonableness under the Fourth Amendment is not a least-intrusive-means test," the availability of significantly less intrusive means of obtaining evidence or "other ways to establish guilt" diminishes law enforcement's need for the evidence. 728 F.3d at 547. And it concluded that less intrusive means were available. *Id.* So the third factor favored Booker. We did not discuss whether there were "other ways to establish guilt" in that case, but it appears that there were: an officer had smelled marijuana when he stopped the car Booker was traveling in; the officer had seen Booker "moving around, as if he was attempting to conceal something"; a drug dog had alerted on the area near Booker; Booker had clenched his buttocks during a pat down; there was a bag with some marijuana near Booker's seat in a car and other bags with what looked like drug residue; Booker had tried to reach for his buttocks while handcuffed; and the officer had seen a string protruding from Booker's anus. *See id.* at 537–38. *Banks*, by contrast, held that because the government had scant other evidence to prove Banks's drug trafficking, the third factor favored the government. 684 F. App'x at 537. This case looks far more like *Banks*. Here, all the DEA agents had to go on was a single eyewitness and a drug dog alert to Ruffin's car, so they needed the drugs to make their case. And although the agents could have used less intrusive means, their methods were nowhere near as extreme as in *Booker*. Thus, the third factor favors the government.

In this case, the third and first factors outweigh the second. Although the search could have been handled better—by beginning with an X-ray and treating Ruffin respectfully—the presence of a warrant, the absence of any safety risk, and the police's need for evidence make this search reasonable.

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's judgment.