NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0289n.06

Case No. 21-5914

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jul 19, 2022
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| JOHN W. LAWSON | ) | DISTRICT OF KENTUCKY |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | O P I N I O N |

Before: BOGGS, COLE, and GRIFFIN, Circuit Judges.

COLE, Circuit Judge. John Lawson was indicted for: (1) unlawful distribution of 500 grams or more of methamphetamine; (2) unlawful distribution of methamphetamine; (3) possession of a firearm in furtherance of drug trafficking; and (4) possession of a firearm by a convicted felon. Prior to trial, Lawson twice unsuccessfully moved to suppress the evidence against him. First, he moved to suppress evidence obtained from a traffic stop. Next, he moved to suppress evidence obtained from two separate searches of his residence. After the district court denied both motions, the jury convicted Lawson on all four counts. Lawson now appeals, arguing that the district court erred in denying his motions to suppress. For the reasons set forth below, we affirm.

## I.  BACKGROUND

In the early morning on February 12, 2020, Gerald Salyer, an officer with the Richmond, Kentucky Police Department, saw John Lawson driving a Chevrolet Suburban at a gas station. Salyer followed Lawson onto the road and ran the vehicle's license plate information through a database called the Automated Vehicle Information System ("AVIS").  AVIS is used by officers to check vehicle information, including the insurance status of a car.  AVIS returned a response of "verify proof of insurance status."  Based on this information, Salyer initiated a traffic stop of Lawson.

Upon contact with Lawson, Salyer told him that the reason for the stop was to verify insurance.  Salyer immediately asked to see Lawson's license and insurance.  Lawson was unable to provide valid proof of insurance, even after Salyer offered to call potential insurance providers. While Lawson unsuccessfully searched for insurance, Deputy Sherriff Jonathan Thompson and his drug detection dog, Kash, arrived on the scene.  Kash alerted the officers to the presence of drugs inside of the Suburban.  This led the officers to search the car.  They found $23,000 in cash, two glass pipes with possible drug residue, a loaded handgun, and a utility bill addressed to Lawson at 4442 Hays Fork Lane in Richmond, Kentucky.    A search of Lawson's person, incident to arrest, revealed $500 in cash, a single Lortab pill, a small plastic bag, and several bullets.

Based on the evidence found at the traffic stop, Salyer immediately applied for a warrant to search the residence located at 4442 Hays Fork Lane.  In addition to the foregoing information, Salyer's affidavit included the following facts:

1. At the stop, Lawson provided officers with inconsistent stories about where the cash came from.

2. Salyer checked Lawson's criminal history and found that it included a prior federal conviction for conspiracy to manufacture methamphetamine. He also had pending charges for drug offenses, among other activities, in Madison County, where Richmond is located.

3. The vehicle was registered at 4442 Hays Fork Lane.

4. After the stop, Salyer spoke to Madison County officers and detectives with the Madison County drug task force, who informed him that "Lawson has been known to transport 15 to 20 lbs of Methamphetamine from Atlanta, Georgia to Kentucky." (Order, R. 73, PageID 381; Salyer Aff., R. 60-1.)

5. The detectives also told Salyer they had received multiple complaints[1] that Lawson stored large amounts of cash and methamphetamine in hidden compartments in his residence at 4442 Hays Fork Lane.

6. Salyer had reviewed one specific complaint, which was sent to him by Deputy Quiles. This complaint stated that Quiles had been directly informed by a known and named individual that Lawson was a "big drug dealer" who lived on Hays Fork Lane. This informant told Quiles that Lawson went to Atlanta and other cities and picked up 15 pounds of methamphetamine and other drugs. When Quiles asked the informant whether he had ever seen any of this himself, the informant said he had seen both the drugs and money firsthand.

7. Salyer's training, experience, and participation in drug trafficking investigations gave him additional insights.

Salyer was successful in obtaining the search warrant, and that same afternoon, the Richmond Police Department and officers from the local drug task force executed the warrant.

---

[1] "Complaints" refers to information (such as tips) given to officers by private citizens, typically related to suspected criminal activity.

The officers seized the following items from the residence: (1) a loaded rifle with ammunition; (2) paper ledgers indicating large amounts of money and narcotics; (3) a large bundle of American currency; and (4) a large amount of suspected Xanax tablets inside a baggie. While searching the residence, the officers were advised that suspected heroin and methamphetamine were found on Lawson at the Madison County Detention Center. Thus, the officers terminated the search and filed another affidavit, this time seeking a warrant for the 4442 Hays Fork Lane residence that would authorize a search for controlled substances. The first search warrant did not reference drugs, but sought only "records, notes, writings, documents, recordings, safes, computers and cellular telephones" for evidence of crime generally. Detective Donovan Nolan of the Kentucky State Police authored the second search warrant, and his affidavit "presented essentially identical information to Officer Salyer's affidavit." (Order, R. 73, PageID 382.) Additionally, Nolan's affidavit listed what had been found during the first search of the residence and the narcotics found on Lawson at the jail.

The officers successfully obtained the second search warrant that same day. Then, they executed another search of the residence and found "a bag with suspected Xanax pills and other individual packages of suspected Xanax, a large bag containing suspected methamphetamine, a money counter, another handgun and ammunition, various currency (in unknown amounts), and a large digital scale."

Lawson was indicted in the Eastern District of Kentucky on four counts: (1) unlawful distribution of 500 grams or more of methamphetamine, in violation of 21 USC § 841(a)(1); (2) unlawful distribution of methamphetamine, in violation of § 841(a)(1); (3) possession of a firearm in furtherance of drug trafficking, in violation of 18 USC § 924(c); and (4) possession of a firearm by a convicted felon, in violation of 18 USC § 922(g)(1).

Lawson separately moved to suppress the evidence obtained from the traffic stop and the evidence obtained from both searches of 4442 Hays Fork Lane. After both motions were unsuccessful, Lawson stood trial and the jury convicted him on all four counts. He was sentenced to 240 months of imprisonment and ten years of supervised release. Lawson timely appealed.

## II. ANALYSIS

Lawson presents two arguments on appeal. Lawson first argues that the traffic stop was not supported by reasonable suspicion, and therefore the district court erred in denying his motion to suppress the evidence obtained because of the stop. According to Lawson, a response from AVIS suggesting that insurance status should be verified cannot give rise to reasonable suspicion supporting an investigatory stop. Therefore, in his view, the district court erred in denying his motion to suppress the evidence obtained because of the stop. Second, Lawson argues that the district court erred when it denied his motion to suppress the evidence obtained from the two searches of the 4442 Hays Fork Lane residence. Lawson contends that the searches were unlawful because Salyer's affidavit failed to establish a sufficient nexus between the residence and suspected criminal activity in support of probable cause. Lawson further argues that the good-faith exception does not apply to this case because, according to him, the affidavit was bare bones and lacked any indicia of probable cause. We address each argument in turn.

### A. Motion to Suppress Evidence from the Traffic Stop

We start by addressing the legality of the traffic stop. Kentucky law requires motor vehicle insurance. Ky. Rev. Stat §§ 304.39-090, 186A.065. In this case, Salyer's sole basis for initiating the stop was an AVIS response indicating that the Suburban's insurance should be verified. Thus, the dispositive issue here is whether that AVIS notification gave rise to reasonable suspicion sufficient to support stopping Lawson.

"When reviewing a motion to suppress, [the panel] must consider evidence in the light most likely to support the district court's decision[.]" *United States v. Marxen*, 410 F.3d 326, 328 (6th Cir. 2005) (citation and quotation marks omitted). "[A] district court's factual findings are accepted unless they are clearly erroneous; however, the district court's application of the law to the facts, such as a finding of probable cause, is reviewed de novo." *United States v. Pasquarille*, 20 F.3d 682, 685 (6th Cir. 1994) (quoting *United States v. Thomas*, 11 F.3d 620, 627 (6th Cir. 1993)).

The stop of a vehicle qualifies as the "seizure" of a "person" that must be "reasonable" under the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809–10 (1996). But in this context, the reasonableness inquiry does not require a warrant. The law permits vehicle stops based on a mere "reasonable suspicion" that a felony has occurred or that a misdemeanor is occurring. *See United States v. Collazo*, 818 F.3d 247, 253–54 (6th Cir. 2016). Reasonable suspicion is more than a hunch, but it is "considerably less than proof of wrongdoing by a preponderance of the evidence." *United States v. Townsend*, 330 F.3d 438, 441 (6th Cir. 2003) (citation omitted). "If an officer possesses a particularized and objective basis for suspecting the particular person of criminal activity based on specific and articulable facts, he may conduct a . . . stop." *Dorsey v. Barber,* 517 F.3d 389, 395 (6th Cir. 2008) (quoting *Smoak v. Hall*, 460 F.3d 768, 778–79 (6th Cir. 2006)).

The lawfulness of an investigatory stop is judged by the totality of the circumstances to "determine whether the individual factors, taken as a whole, give rise to reasonable suspicion, even if each individual factor is entirely consistent with innocent behavior when examined separately." *United States v. Perez,* 440 F.3d 363, 371 (6th Cir. 2006) (quoting *United States v. Smith*, 263 F.3d 571, 588 (6th Cir. 2001)). "This process allows officers to draw on their own experience and

specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *United States v. Pearce,* 531 F.3d 374, 380 (6th Cir. 2008) (citation and quotation marks omitted).

Here, the totality of circumstances gave rise to reasonable suspicion that Lawson was engaged in criminal activity (in this case, driving without insurance). On the morning of the stop, Salyer ran the Suburban's license plate information through AVIS. AVIS returned a response of "verify proof of insurance status." Drawing on his three years of experience as an officer, Salyer believed that this AVIS response constituted reasonable suspicion in support of a stop. He testified that he had used the AVIS database in each of his approximately 1,000 traffic stops. In 100 of these traffic stops, Salyer's decision to initiate the stop was based entirely on an AVIS response of "verify proof of insurance", and in about 75% of those stops, the driver could not provide proof of valid insurance. Given that Salyer testified he had used AVIS thousands of times, and that in his experience the system was generally reliable, a response of "verify proof of insurance" provided Salyer with reasonable suspicion that Lawson was violating Kentucky law.

Because the traffic stop was supported by reasonable suspicion, we affirm the district court's denial of Lawson's first motion to suppress the evidence.

**B. Motion to Suppress the Evidence from the Searches of 4442 Hays Fork Lane**

Turning to the second issue on appeal, Lawson argues that the district court erred in denying his motion to suppress the evidence obtained from both searches of the 4442 Hays Fork Lane residence. Specifically, he contends that the searches of the 4442 Hays Fork Lane residence were not supported by probable cause because Salyer's affidavit failed to establish a minimally sufficient nexus between ongoing criminal activity and 4442 Hays Fork Lane. For the following reasons, we agree with the district court that the warrants were supported by probable cause.

As an initial matter, officers were authorized to search 4442 Hays Fork Lane twice. But in his briefing, Lawson focuses entirely on Salyer's affidavit, which was only offered in support of the first search warrant. But because the second affidavit, Nolan's affidavit, naturally flows from Salyer's affidavit and contains nearly identical information, our discussion is relevant to both probable cause determinations.

The Fourth Amendment requires a search warrant to be supported by probable cause. U.S. Const. amend. IV. ("[N]o Warrants shall issue, but upon probable cause . . . .). Probable cause exists when an affidavit shows a "fair probability" that criminal evidence will be found in the place to be searched. *United States v. Hines*, 885 F.3d 919, 923 (6th Cir. 2018) (quoting *United States v. Dyer*, 580 F.3d 386, 390 (6th Cir. 2009)). Put simply, there must be a "nexus between the place to be searched and the evidence sought." *United States v. Laughton*, 409 F.3d 744, 747 (6th Cir. 2005) (quoting *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2005) (en banc)).

Giving great deference to the issuing judge's determination, we examine the affidavit's four corners to determine whether, under the totality of the circumstances, the low bar of probable cause has been overcome. *See United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006); *see also District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) ("Probable cause 'is not a high bar.'" (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014))). We review the district court's legal conclusions on this matter de novo. *See Carpenter*, 360 F.3d at 594. We overturn a judge's finding of probable cause only if the judge "arbitrarily exercised his or her authority." *United States v. Christian*, 925 F.3d 305, 311–12 (6th Cir. 2019) (en banc) (citation omitted).

In the present case, when viewed in the light most favorable to the government and while giving the issuing judge "great deference", the contents of the affidavits were more than enough to establish probable cause.

To summarize, the issuing judge knew that Lawson was found in the early morning with $500 in cash, multiple bullets, a Lortab, and a small bag with possible drug residue. Inside Lawson's vehicle, officers found a loaded handgun, approximately $23,000 in cash, two glass pipes with suspected drug residue, and a 100-gram weight. Further, Lawson had a criminal record, including a drug conviction, and he gave inconsistent stories to officers regarding where the large amounts of cash came from. Inside the vehicle, officers also found a utility bill in Lawson's name for 4442 Hays Fork Lane, the address to which the vehicle was registered. What's more, Salyer's affidavit also discussed several complaints received by law enforcement. And Salyer reviewed a specific tip from a named source known to Deputy Quiles, that Lawson was a "big drug dealer" who lived on Hays Fork Lane. This known individual reported that Lawson went to Atlanta and other cities and picked up methamphetamine and other drugs. Presented with this detailed factual mosaic and with Salyer's firsthand knowledge of drug-trafficking investigations, it was certainly reasonable for the judge to determine there was a "fair probability" that criminal evidence would be found in 4442 Hays Fork Lane. Nolan's affidavit contained the same information, as well as the evidence found during the first search of 4442 Hays Fork Lane.

Lawson counters that the evidence does not sufficiently establish that he "was involved in ongoing criminal activity." (Appellant Br. 21.) But we disagree. First, the search warrants were both obtained and executed the same day that an earlier search of Lawson's person and vehicle produced indicia of drug sales. And additional narcotics were found on Lawson in the jail, indicating that Lawson was engaged in ongoing criminal activity. Nonetheless, Lawson still objects to the judge's probable cause determination, arguing that "when each piece of evidence is unpacked and evaluated, individually and collectively, a sufficient nexus is lacking between the traffic stop and 4442 Hays Fork Lane justifying the search warrant." (Appellant Br. 16.)

Lawson primarily takes issue with the tips included in the affidavit, which he refers to as anonymous. He argues that "[t]he only evidence of prior alleged drug trafficking activity within the affidavit" came from anonymous, unverified tips. (Appellant Br. 16.) According to Lawson, these tips were not independently corroborated and thus cannot support a finding of probable cause. This argument is unpersuasive.

First, not every source who spoke about Lawson to the police was anonymous. As previously discussed, both affidavits present a complaint sent by Quiles, who spoke to a named and known source. Further, the named source gave a tip based on firsthand knowledge: they told Quiles that they had seen large amounts of money and drugs in Lawson's home. This kind of tip is given weight in a probable cause inquiry because, if the statement was fabricated, police could easily subject the known informant to criminal liability. *United States v. May*, 399 F.3d 817, 823 (6th Cir. 2005). Because this informant was known to law enforcement, and because of the informant's firsthand knowledge, the information has indicia of reliability even without independent corroboration. And that information was further corroborated by other information in the affidavit, such as Lawson's prior drug trafficking history.

Second, Lawson is right that some of the complaints listed in the affidavit were from unnamed informants. But although anonymous tips alone can "fall short of probable cause," *United States v. Sheckles*, 996 F.3d 330, 341 (6th Cir. 2021), the tips in this case were corroborated by several facts in Salyer's affidavit. First, Lawson had a prior drug trafficking conviction. Second, indicia of drug sales were found on Lawson's person and in his vehicle during the traffic stop, corroborating the tips from unnamed informants regarding Lawson's involvement in drug sales. And finally, the information that Quiles received from the named, known informant

supported the complaints that were without a named source. Thus, the tips at issue here should not be viewed as unreliable.

Even if we did see these tips as less reliable, when the facts are viewed in their totality and in the light most favorable to the government, the affidavits nonetheless showed a "fair probability" that criminal evidence would be found at 4442 Hays Fork Lane. *Hines*, 885 F.3d at 923 (quoting *Dyer*, 580 F.3d at 390). Given that both searches were supported by probable cause, we need not examine whether the officers acted in good faith in relying on the search warrants. *See United States v. Leon*, 468 U.S. 897 (1984). We affirm the district court's denial of Lawson's second motion to suppress the evidence.

## III.  CONCLUSION

For the foregoing reasons, we affirm the denial of the motions to suppress.